## R. U. V. ENGINEERING CORPORATION v. BORDEN CO.

District Court, S. D. New York.

July 19, 1946.

Bohleber, Fassett & Montstream, of New York City (William Bohleber, Francis H. Fassett, and John M. Montstream, all of New York City, of counsel), for plaintiff.

Maxwell Barus, of New York City (Maxwell Barus, Charles H. Walker, and John B. Cuningham, all of New York City, of counsel), for defendant.

COXE, District Judge.

This is a suit for alleged infringement of the Berndt & Creighton patent, No. 2,072,416, issued March 2, 1937, for a "method of irradiating substances with active rays."

The only claims in issue are Nos. 13, 14, 16, 17 and 18, all of which were added in a renewal application after the original application had been permitted to lapse for non-payment of the final fee.

The principal defenses are invalidity for anticipation and lack of invention, and non-infringement. It is also insisted that the claims in issue, and the only portions of the description relating to them, were improperly inserted in the application more than two years after the method now asserted to constitute infringement had gone into wide public use.

The original application for the patent was filed on January 16, 1933, and disclosed a multiple exposure method for treating milk and other substances with ultraviolet rays for sterilization, activation or other purposes, in a series of partial exposures, with a thorough mixing between each successive partial exposure. The method was described as follows:

"Our method relates to the irradiation of substances capable of having beneficial or detrimental effects imparted thereto and comprises treating such a substance with a number of short intermittent exposures to radiant energy emanating from one or more sources or stages of active rays, no one of said exposures being sufficient to give the whole body of the substance the amount of treatment necessary to produce the ultimate desired beneficial results or effects, and mixing the substance between exposures, such that said mixings take place away from the action of the rays to permit one to control the distribution and amount of treatment received by the substance."

And it was stated with respect to the number of partial exposures, as follows:

"We have discovered that a few or thousands of exposures to radiant energy of short wave lengths may be utilized to produce beneficial effects in a substance when the time of each exposure is only a fraction of a second, as will be hereafter described."

For carrying out the method, the application referred to certain pressure machines in which milk was forced along the surface of a quartz tube and exposed to ultraviolet light generated within the tube. The specific machines referred to were either of the baffle type or of the plain annulus type. The baffle type machine is illustrated by the drawings which were added soon after the application was filed, and these show a circular milk chamber equipped with radial baffles, through which the milk is swirled towards and away from the quartz tube in order to obtain a plurality of short exposures with mixings between such exposures. The annulus type machine was not specifically described, but was mentioned only as providing apparatus capable of carrying out the disclosed method.

The original application was allowed on March 29, 1934, with 12 claims, all expressly limited to multiple exposure methods. The application was then permitted to lapse for failure to pay the final fee, and on March 22, 1935, a renewal application was filed with no material change in the original specification, but adding three new claims designed to cover single exposure methods. These three new claims were supplemented on December 16, 1935, by one other claim, and on July 28, 1936, by three more claims, all phrased in much the same way as the earlier additions; and on July 28, 1936, amendments were made to the specification in an attempt to provide some support for the additions. In the meantime, the first four of the new claims had undergone some changes, and on August 8, 1936, the patent was allowed with 19 claims, the seven new claims becoming Nos. 13 to 19, inclusive. The patent issued on March 2, 1937.

The amendments to the specification inserted on July 28, 1936, were in part as follows:

"With respect to the irradiation of milk our invention is not necessarily limited to the production of Vitamin D potency in excess of that which others have heretofore attained but rather is specifically directed, inter alia to the production of the Vitamin D effect without detrimental effects in an efficient manner by the novel process of treating the milk *by a single exposure while no substantial mixing takes place therein,* and this is contrary to all the teachings of the art. By utilizing the principle of first treating free from substantial mixing and then mixing the treated and untreated portions we are enabled to irradiate milk of the usual degree of potency of about 50 units in only a fraction of the time required by others; or stated in another way, we are enabled to irradiate many times the amount which others can irradiate in the same length of time, everything else being equal."

"These repeated treatments are not necessary or essential in the irradiation of milk for the Vitamin D effect since, as heretofore and hereinafter pointed out, we have found that with milk we can produce a substantial increase in the Vitamin D effect with a single exposure for a fraction of a second."

These amendments were inserted at places in the specification which emphasized the advantages to be derived from repeated exposures with mixing between exposures, and are entirely inconsistent with the previous teaching of the patent.

Of the five claims in issue, claim No. 13 is fairly typical, reading as follows:

"13. The method of antirachitically activating milk by means of ultra-violet rays without imparting undesirable detrimental effects thereto, which comprises the steps of conveying the milk in a moving layer thicker than that through which the rays will effectively penetrate during such movement, and, during such movement, exposing the portion of said layer proximate the ray source to a beneficially effective amount of ultra violet ray energy, said layer being of such thickness as to enable the treatment of such a fraction thereof that the desired potency is obtained in the total volume of milk conveyed when said proximate beneficially affected portion is mixed

with the remote portion thereof, and the duration of such exposure being sufficiently short and operating conditions such that no substantial mixing takes place during such exposure, and thereafter mixing the beneficially affected and remote portions of said milk."

The four other claims are not materially different from claim 13, except that claims 14 and 18 specify that the exposure to ultra violet rays is "for only a fraction of a second."

The defendant is charged particularly with infringement in the use of irradiating apparatus manufactured by the Hanovia Chemical & Manufacturing Company, and it has been stipulated that one of the various kinds of such apparatus used by the defendant is the Hanovia Model SSV 2. This Hanovia machine consists of two smooth flat flow boards inclined in a V shape, with a distributing weir at the top of each flow board, a collecting trough at the bottom of each flow board, and two mercury vapor lamps located substantially midway between the two flow boards and about 10 inches below the level of the weirs. In normal operation, the machine produces in milk a potency of approximately 400 U.S.P. vitamin D units per quart, without giving the milk an undesirable odor or taste.

The art relating to the antirachitic activation of milk by exposure to ultraviolet rays has a long history, and need not be reviewed in any great detail; it had its greatest impetus in this country as the result of the work of Dr. Steenbock of the University of Wisconsin prior to 1924, which culminated in the Steenbock patent, No. 1,680,818, issued August 14, 1928, on an application filed June 30, 1924. In that patent it was pointed out, among other things, that milk contained provitamin D and could be activated "to a certain extent," preferably by being "allowed to flow in films subject to a light treatment." But even before Steenbock's work in antirachitic activation, the Keyes patent, No. 1,307,-500 (1919), had shown an apparatus for sterilizing or irradiating milk, consisting of a slightly concave washboardlike flowboard, over the surface of which a film of milk was flowed, under the action of gravity, from a distributing trough at the top to a collecting trough at the bottom, while exposed to the ultraviolet rays of a mercury vapor lamp.

Steenbock published his disclosure in 1924, and soon afterwards Supplee developed a commercial equipment and method for irradiating milk, known as the Supplee Cooler, which went into commercial use as early as 1927. This equipment is described in the Supplee patent, No. 1,817,936 (1931), and shows the use of a standard milk cooler as the flowboard, and the irradiation of the milk as it flows down the corrugated surface. The principal contribution made by Supplee was the discovery that, when strong ultraviolet radiation is used for irradiating flowing milk, the vitamin D potency increases much faster than taste or odor in the early stages of irradiation, so that by using sufficiently strong irradiation commercial potencies can be obtained in a few seconds without impairing the odor or taste of the milk.

The Scheidt British patent, No. 257,956 (1927), shows the irradiation of milk by flowing it in "a very thin film" of the thickness of about one-half a millimeter down the vertical legs of a long thin lamp bent in the form of a U shaped tube. The Andresen German publication (1930) describes the work done in a baby hospital at Kiel in 1928 and 1929 using irradiating devices then on the market in Germany. It shows apparatus similar to the defendant's Hanovia apparatus, with V shaped smooth flowboards, distributing troughs at the top and collecting troughs at the bottom, and an ultraviolet lamp in the center. The article points out that the hospital was able to control the film thickness and time of exposure by adjusting the flow rate of the milk to the rate found to give the best potency without disagreeable taste or odor as determined by biological tests.

In 1931, Weckel, of the Wisconsin Foundation, commenced work on improving the apparatus of the Supplee cooler, which, after considerable experimentation, he found to have some limitations for extensive commercial use. He thought that it would be better to use a flow board surrounding the lamp in order to protect the operator's eyes from the ultraviolet rays, and he wanted to have a unit which could be standardized for

use in small dairies. He accordingly developed, in conjunction with the Creamery Package Company, a pail shaped irradiator with an annular distributing trough at the top and a collecting trough at the bottom. The surface of the flow board was smooth, and had a series of smooth annular ridges to keep the flow uniform. A group of four carbon lamps in the center provided the irradiation. The first commercial installation of the irradiator was made at Benton Harbor, Michigan, in May 1933, more than two years prior to the insertion on July 28, 1936, in the application for the patent in suit of any disclosure relating to a single disclosure method. During 1933, this Creamery Package irradiator went into wide commercial use by the defendant and others. In 1934 and 1935, carbon arc lamps giving more powerful ultraviolet irradiation were developed, and it became possible to step up the flow rate for the same potency. Later, as still more powerful carbon lamps were provided, the potency was greatly increased.

In the Fall of 1933, Trebler of the National Dairy Company, in cooperation with the Hanovia Company, developed an irradiating equipment comprising two smooth flow boards arranged in a V shape with a distributing weir at the top, a collecting trough at the bottom, and mercury lamps near the center of the V. Drawings for the commercial machine were prepared January 11, 1934, and the first machine was sold and delivered to the Brighton Place Dairy, at Rochester, N. Y., February 10, 1934, and put into commercial use. Following this installation, a large number of these Hanovia machines of the same or larger capacity were sold, and several were purchased and used by the defendant in 1934 and 1937. Subsequently, the Hanovia Company brought out machines of the same type with mercury vapor lamps of much higher intensities, and it is one of these late models which the plaintiff particularly charges with infringement in the present suit.

**First:** The claims in issue are plainly invalid for lack of invention. Stripped of unnecessary verbiage, they specify the exposure to the action of ultra-violet rays (1) of a moving layer or stream of milk "thicker than that through which the rays will effectively penetrate," (2) under such "conditions" that "no substantial mixing takes place" during exposure, and (3) thereafter mixing the treated and untreated portions of the milk. Claims 14 and 18 add a further requirement, not found in the other three claims, that the time of exposure be for "only a fraction of a second." Aside from the vague and functional character of this language, which is nowhere explained in the specification, it is clear that the method of these claims shows no advance over the prior art.

The plaintiff says in its brief that the words "effectively penetrate" mean "complete activation of all the particles"; but there is no evidence that this is ever possible. The prior art references show the irradiation of a moving layer or stream of milk by exposure in a single exposure to the action of ultraviolet rays. This is disclosed in the Keyes patent, No. 1,307,500, the Supplee patent, No. 1,817,936, the Scheidt British patent, No. 257,936, and the Andresen German publication. These same references also show "no substantial mixing" during exposure. Keyes and Supplee had some mixing during exposure but it was not "substantial" by any test supplied by the patent in suit. Scheidt operated with smooth surface flowboards, and the amount of mixing he obtained during exposure was necessarily negligible. This also is true of the smooth surface flowboards of the Andresen German publication. The last step in the method of the claims calling for mixing of the treated and untreated portions of the milk after exposure is obviously nothing more than what certainly would take place in any activation method, and needs no comment.

The requirement of claims 14 and 18 that the time of exposure be "only a fraction of a second" adds nothing to those claims, for, as taught by Supplee in patent No. 1,817,-936, the time of exposure varies "in accordance with the strength of the lamp and its distance from the milk," and these and other variables must necessarily be taken into consideration in determining the time of exposure in any single exposure method for irradiating milk.

■ Second: I think, also, that the claims in issue are invalid because of public use of the method which they are asserted to cover more than two years before any disclosure thereof was made to the Patent Office. Muncie Gear Works v. Outboard Marine & Manufacturing Co., 315 U.S. 759, 768, 62 S.Ct. 865, 86 L.Ed. 1171; Chicago & N. W. R. Co. v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053. See Engineering Development Lab. v. Radio Corporation of America, 2 Cir., 153 F.2d 523; see also Benz v. Celeste Fur Dyeing & Dressing Corporation, 2 Cir., 156 F.2d 510.

In the original application for the patent, filed on January 16, 1933, the entire disclosure was directed to a multiple exposure method involving a series of partial exposures with a thorough mixing between each successive partial exposure. The only suggestion of single exposure was a casual statement in the specification reading—"We have also found that when the irradiation is properly controlled we can produce in milk a substantial increase in the Vitamin D effect with a single exposure of about $\frac{1}{20}$ of a second." This statement clearly had reference only to a step in the multiple exposure method, which was described at great length in other parts of the specification. The specification remained in substantially its original form (except for the addition of the description of the apparatus shown by the drawings) until July 28, 1936, when the amendments hereinbefore quoted were made in an attempt to provide some support for single exposure claims. In the meantime, the original application had been allowed with all claims expressly limited to multiple exposure methods, and it was only when the renewal application was filed on March 22, 1935, that the first three single exposure claims were added. These three claims were promptly rejected, but were later allowed with changes, together with the four other single exposure claims, after the July 28, 1936, amendments to the specification.

The first Creamery Package irradiator went into public use in May 1933, and the first Hanovia irradiator on February 10, 1934, both more than two years before the July 28, 1936, amendments to the specification in which it was first asserted that it was not necessary to have repeated exposures of the milk as required by the original disclosure. These two original Creamery Package and Hanovia types of irradiators have been in wide commercial use, and their method of operation has been closely followed in the later models placed upon the market. There is, therefore, no doubt of the existence of very substantial intervening rights.

I hold that all of the claims in suit are invalid for lack of invention, and also because of public use of the method which they purport to cover more than two years prior to disclosure; and with this disposition it is unnecessary to pass on the other questions presented.

There may be a decree adjudging that claims 13, 14, 16, 17 and 18 of the Berndt & Creighton patent, No. 2,072,416, issued March 2, 1937, are invalid, and dismissing the complaint, with costs.