## HAJEK et al. v. RADIO CORPORATION OF AMERICA et al.
### No. 5652.

Circuit Court of Appeals, Seventh Circuit.
March 20, 1936.

Rehearing Denied May 19, 1936.

Robert L. Kahn and William McKinley, both of Chicago, Ill., for appellants.

Stephen H. Philbin, of New York City, Charles W. McClair, of Harrison, N. J., and Glen E. Smith, of Chicago, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This is an appeal from a decree of the District Court finding valid and infringed three patents: 1,893,466, issued to Gowen, January 3, 1933; 1,718,206, to Mouromtseff, June 18, 1929; and 1,374,679, to Pratt, April 12, 1921. In the first-mentioned patent, claims 3, 6, 11, and 12 are involved, in the second, claim 4, and in the third, claims 2 and 4. Claim 2 of Pratt the court did not mention in its findings.

Gowen, 1,893,466, covers a specific form of construction of a vacuum tube, wherein are tied together all the elements so as to hold them in position as an integrated whole and to prevent, as the patentee claims, "derangement due to vibra-

tion, shock or the like." The claims include nothing new other than the qualities claimed to be due to such specified form of structure. The construction includes an insulating block, supported by the anode and containing holes for the upper ends of vertical posts of the grid and supporting the cathode and grid, with a cathode supported under tension by means passing through other holes in the block, the measurements and physical relationships being such as to produce the desired recognized electrical functions and merits. A glass base contains wires sealed therein, which support and space the bottom of the electrodes and conduct electrical current to and from the electrodes. The anode is a plate of metal bent over at the middle so as to bring the two portions into comparatively close proximity and parallel to each other. A portion of the bent section is cut out leaving at the two sides narrow uncut strips of the curved metal, which hug the insulating block and entirely support it. The grid includes two wires, around which is wound a flat helix, and is supported by the two wires sealed in the base. The cathode, within the grid, is supported by wires running up from the base, and is connected with another wire passing through the insulating block and terminating in a coil spring which keeps it under tension.

■ The patent being for an improvement only, and prescribing a specific structure utilizing old elements, the claims, if valid, must be limited to the specific construction employed and disclosed.

■ In claim 3 the patentee specifies "a plurality of electrode elements supported at one end by the base." In the file history, it appears that Gowen persistently contended that his "insulation block has no support connection to the base, but is supported solely by the electrodes which it binds together." His contests in interference and his discrimination between what he claimed and the prior art cited against him, left him with very narrow claims confined to specific limits.

Appellants' construction is of much sturdier character. It includes a glass stem to which is attached a clamping band, upon which, in turn, are four comparatively heavy supporting wires, which carry the entire assembly of electrodes in a manner such, as appellants say, "as the steel skeleton of a skyscraper, from which are hung the side-walls and floors." Two cross-shaped insulators are tied by cross wires and thereby rigidly maintained in position. The anode rests freely between the insulators and is supported by them and the vertical wires. It is not open on the sides as in Gowen. The grid and cathode are supported between the two insulators and do not depend upon the wires sealed in the base for any support, as in Gowen. Such wires, in appellants' product, perform only an electrical function. The anode is carried by the clamp and does not support the insulator, and is not supported from the wires sealed in the base, as in Gowen.

Claim 6 requires "a block of insulating material supported by the anode." This feature is absent in appellants' device; there the anode does not support anything.

If by his specified structure Gowen achieved invention over the prior art, appellants, by varying the structure, following a different concept of physical relationship, achieving greater sturdiness, rigidity, and less danger of derangement, cannot be said to infringe.

■ Mouromtseff, 1,718,206, employs the Gowen structure, substituting therein an alleged improvement in the form of a cross-bar insulator in lieu of a single bar insulator. This, he said, tended, to prevent creepage. Appellant insists that the argument in this respect is fallacious, but, aside from that, we should observe that the cross-bar insulator was old in Moore, 1,316,967. The mere fact that it was placed in a light tube rather than some other vacuum tube seems to us immaterial. The use of the bar was thereby taught. If the patentee's predecessors in the same or analogous arts gave to the world the specific element, the fact that such construction, being old, was conducive to prevention of creepage, would not constitute invention in physical structure, or if such could be attributed, appellants would not infringe in using the same construction with no such function involved. Houskeeper, 1,480,208, likewise was very close to Mouromtseff. We are of the opinion, in view of the prior art, that invention was not involved in this patent.

■ Pratt, 1,374,679, likewise has to do with radio tubes from which it is necessary, in practice, to eliminate all gas. He provided a method of removing gas contained in the mechanical elements in the interior of a radio tube by heating the whole and ridding the inner elements of gases by vacuum pumping, either before or during the exhaust, heating the electrodes to drive out

gas by means of high frequency currents, which flow in a coil around the tube and induce the required heat currents in the electrodes. Previous methods had included so-called "cooking" the tube in an oven, use of calcium pumps and "bombarding" the anode with electrons from the cathode to remove the gas from the anode. The question is whether the teachings of the prior art are sufficient to instruct the skilled workman to produce the method of Pratt.

Hewitt, 843,534, implied a process similar to that of Pratt, except that instead of being intended to degasify metal it taught operation upon gas directly. He made use of alternating currents in induction heating, the currents being of a frequency sufficiently high to make interlinkage with a magnetic core unnecessary.

Babcock, 947,092, dealing with induction heating, employed a high-frequency current passing through the outer coil, as in Pratt. Friedrich, 1,083,677, dealing with removing gases from an X-ray tube, made use of the same functional means. Giolitti, 1,144,034 had to do with induction heating system for heating metal ingots. This patent taught the method of induction heating in general. Northrup, in his two companion patents, 1,286,394 and 1,286,395, showed induction furnaces in general. He stated that the primary purpose of his invention was to "transfer electric energy into a continuous mass by electro-magnetic induction and there to convert the electric energy into thermal energy in such mass by means of high frequency currents and without the whole or partial interlinkage of a ferro-magnetic with an electric circuit." He stated that one of his purposes was to eliminate necessity for such interlinkage. He employed, as he said, high frequency, and claimed to be the first to produce effective electric heating by induction without interlinking a magnetic circuit, and the first to use high-frequency currents in his art. Despite the controversy as to the meaning of the words "high frequency," we are of the opinion that the use of the words in Northrup is not to be limited so as to distinguish it from the sense in which Pratt employed them. He stated that in all forms of his invention "the heating coil need merely surround that form of crucible most convenient and the crucible may be designed with special reference to vacuum maintenance." This clearly showed that he was applying induction heating to envelopes wherein vacuums were to be maintained.

Pratt merely used the same method of heating the entire vacuum tube with its contents in order to eliminate the gases from the metal while the tube was still on the vacuum pump, without interlinkage with an iron or magnetic core. This method of extracting gas from metallic products was, as we have seen, old in the electric art, and we do not believe that invention is to be attributed to the claims here involved, because it is asserted that he made use of frequencies of such greater height as to be unprecedented in the art. Thus, in Pennsylvania R. Co. v. Locomotive Truck Co., 110 U.S. 490, 494, 4 S.Ct. 220, 222, 28 L. Ed. 222, the court said: "It is settled * * that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated."

The problems of Pratt and Northrup were not so far alien to each other as to remove Pratt beyond the scope of Northrup's teachings. This court said, in Automatic Welding Co. v. Smith Corporation, 60 F.(2d) 740, 743:

"Obviously, the problem of the electrical engineer in the other fields was so similar, and necessarily so, that one trained as an electrical engineer must be chargeable with the knowledge common to those who labored in those fields.

"It is not the difference between the automatic metallic arc welding art and the illuminating arc art that is involved. To point out the difference between these two arts begs the question. In both cases the similarity, as well as the dissimilarity, under scrutiny must be limited to the means available to a worker in either art for maintaining constant the length, and therefore the intensity, of the arc. It seems to us that an electrical engineer, or other worker skilled in this art, would naturally turn to other electrical fields such as lighting and adopt the means there commonly used to automatically regulate the length of the arc, and it would matter not whether the arc was produced by a carbon or a metallic electrode."

As the Supreme Court said in Paramount Corporation v. Tri-Ergon Corporation, 294 U.S. 464, 473, 55 S.Ct. 449, 453, 79 L.Ed. 997: "To claim the merit of invention, the patented process must itself possess novelty. The application of an old

process to a new and closely analogous subject-matter, plainly indicated by the prior art as an appropriate subject of the process, is not invention."

We believe that Pratt is anticipated by Northrup and that everything he did was taught in the analogous arts of his predecessors.

We conclude that Gowen was not infringed, and that Mouromtseff and Pratt are invalid.

The decree of the District Court is reversed, with directions to dismiss the bill for want of equity.

Reversed and remanded.