### INTERNATIONAL CELLUCOTTON PRODUCTS CO. v. STERILEK CO., Inc.

**No. 152.**

Circuit Court of Appeals, Second Circuit.

Jan. 17, 1938.

Cyril A. Soans and William E. Anderson, both of Chicago, Ill., for plaintiff.

W. Lee Helms, of New York City, and Kernan & Kernan, of Utica, N. Y., for defendant.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Both parties appeal from a decree upon the usual bill in equity to enjoin the infringement of Claims 1, 5, 14, 19, 20, 21 and 31 of Patent, No. 1,794,358, issued to William Bauer for a machine for making catamenial pads. The plaintiff alleged that the defendant made two infringing machines, of which the earlier infringed all the claims in suit; and the later, claim 19. The judge held that the earlier machine infringed claims 1, 5, 14, 20, 21 and 31 and that these claims were valid; but that neither machine infringed claim 19, on whose validity for that reason he did not pass. Since the defendant concedes that the first machine infringed Claims 1, 5, 14, 20, 21 and 31, as to these the only issue is of their validity.

Bauer's pads are made up of an inner layer of absorbent material, covered with a gauze wrapping. The machine cuts the inner layer, or pad proper, from a continuous strip or web, and the gauze wrapping from another web; the two webs moving at right angles to each other. Narrow sections are first cut from the filler web, and dropped upon the gauze web, their longer axis in its line of motion; the gauze web continues to advance with the pads upon it, and its side edges are then folded over so as completely to enclose the pads; the folded gauze is finally so cut as to leave a flap at either end for fastening. All the claims in suit, except 19, are for the general features so described; claim 5 may be taken as an adequate specimen; it consists of the two feeding means, one for the filler web, and the other for the gauze—which must feed at right angles to the first; a cutter for the filler; means for depositing the cut pad upon the gauze; and means for folding the gauze around it. The defendant's first machine contained all the elements just mentioned, and indeed, as we have said, infringement is not denied. Its second machine would have also infringed, except that, expressly to avoid infringement, the filler web was made to feed in the same direction as the gauze, the pads being rotated through ninety degrees after they were cut, so as to register properly when dropped. Claim 19 concerns only the means for depositing the cut pad upon the gauze web before it is wrapped. After the knife has cut it off, it rests upon a table which is then horizontally withdrawn, and the pad, left without support, drops upon the gauze. This movement of the table is intermittently actuated by a mechanism best shown in Figure 4, which it is not necessary to describe further than to say that it makes the table oscillate back and forth horizontally. In both the defendant's machines the cut pad is wiped longitudinally off its table and falls upon the web; in the second machine it is at the same time rotated by means of a guide which directs its movement. The wiper is in both cases carried by an endless belt set in motion by sprocket wheels, which move the belt continuously; the wiper moving the pads only during that part of its revolution when it is over the support on which the pads rest.

We can best dispose of the infringement of claim 19, at once, as the issue is very simple. The phrase, "actuated intermittently and independently of the movement of said wrapping and filling material," is apt to describe the movement of the horizontally oscillating table of the disclosure; it will not do for the continuously moving wiper of the defendant. That wiper cannot be said to be "actuated intermittently," for the chain which carries it is driven by sprockets which are always in gear with the drive shaft that "actuates" the whole machine. For the same reason it cannot be said to be "actuated * * * independently of the movement of said wrapping and filling material," at least if that means, as it must, that it does not move whenever those materials move. The defendant's wiper moves all the time, and so does the "wrapping material," i. e. the gauze web, though the filling material does, it is true, proceed by starts and stops. Notwithstanding the last feature, the wiper does not infringe, and if there were any doubt, it would be laid by the fact that this clause was introduced into the claim to avoid

a reference (the "Johnson & Johnson machine"), discovered by the examiner during an interference. Since the defendant's wiper does not satisfy either of the two elements then introduced, Deitel v. Unique Specialty Corporation, 2 Cir., 54 F.2d 359, the doctrine of equivalents cannot help out the claim, even if the situation were a proper one for its application which it is not. And this result is the right one, for it took no invention merely to see the necessity of removing the pads from their support and of placing them on the gauze. Bauer's means of accomplishing this did indeed show ingenuity, and no doubt he can protect them; but the defendant does not use them or anything like them. The judge was plainly right as to claim 19, and the decree will be affirmed so far.

 The validity of the other claims in suit, depends upon what the art had known. There had been a machine in use since 1910 or 1912—Marcus, No. 1,038,493—which made such pads by cutting sections of filler from a continuous web, depositing them upon a gauze web and folding the wrapper around them. The pads themselves were composite, being first built up out of two layers; and the mechanism for wrapping both the outer layer of the pads and the gauze, was in general the same as Bauer's. This was the nearest reference in the immediate field, and to it we shall recur. However, the examiner cited against these claims, as well as against claim 19, the "Johnson & Johnson machine," which we have just mentioned, but about whose structure the file-wrapper tells very little. To escape this reference Bauer limited the claims in suit to a machine in which the gauze ran at right angles to the filler web, just as he introduced into claim 19, the other clause just considered. The defendant bases its case very largely on the assumption that by so doing he conceded that the prior art anticipated the claims except for this interpolated feature. This has been sometimes said in the case of disclaimers, which are in substance limitations imposed after issue; but it is a mistaken view of the law. When an inventor consents to limit his monopoly, there is no reason in fact to impute to him the belief that his only patentable advance lies in the element so introduced. He may merely think that he still retains enough for practical purposes, and that the examiner's insistence does not justify the expense of an appeal. Nor is there any reason to impose upon him the same consequence as though he had formally so conced-

ed; it is enough that he has freed the art except as the claim reads, and that he has surrendered any power under the doctrine of equivalents to resume what he has given up. He has done nothing which need prevent him from insisting in support of the claim as allowed that his invention was broader than the examiner supposed; he is not confined to the examiner's reasoning or committed to his mental processes. United Chromium v. International Silver Co., 2 Cir., 60 F.2d 913, 915. We cannot therefore recognize the "Johnson & Johnson machine" for any purpose whatever; it was not proved as a prior use, and until it was, the defendant might not rely upon it.

Coming back, therefore, to the art which was in fact proved. Marcus's machine, as we have already indicated, anticipated several of the features of Bauer's claims, and it was in the very art. However, although the filler web like Bauer's stopped when the pad was cut, the gauze web stopped also when the end of the gauze was to be cut. Bauer avoided this, and claim 20 contains that limitation. Apparently it is a substantial reason for the increased output. However, Marcus appeared ten or twelve years before Bauer filed his application, though it gave place to Weiss, which Bauer supplanted. We will assume for argument that the new features which Bauer contributed would therefore have demanded invention, had the art contained nothing more. Less than two years before Bauer filed his application, Leibing filed his, for a machine to make excelsior pads. Leibing's filler web —as we may call it—ran at right angles to the wrapping web—more properly to two, wrapping webs, for there were two—and from it segments of the required size were cut off during pauses in its movement. These segments were then pushed forward at a right angle to the filler web until their forward ends engaged two endless belts, one above and one below, at which point they came into contact with two paper strips which were to close their open sides. These strips had just been cut to length and wetted; they were segments of two continuous gummed strips, drawn forward by a train of rollers and belts. The mechanism by which they were turned over and clamped down upon the open ends of the pads was different from Bauer's, but Bauer was an imitator of Marcus in his turning devices. It was not necessary for Leibing to wrap his pad completely, and he did not therefore have a single wrapping web wide enough for that purpose; but again, Bauer could

take nothing from that difference, for Marcus had had a single wrapper. Nor do we see that anything turns upon the fact that the wrapping webs were cut before they were applied; it was optional with Leibing when to cut them, though perhaps it was not with Bauer, who had to deal with flimsy gauze. If it is permissible to think of Bauer as having both Marcus and Leibing before him, enough was not left for him to invent to support the claims in suit.

The case therefore comes down to whether we shall say that it took any uncommon originality to select Leibing for improving upon Marcus. In deciding that question we must suppose the inventor to be endowed, as in fact no inventor ever is endowed; we are to impute to him knowledge of all that is not only in his immediate field, but in all fields nearly akin to that field. That does not indeed answer the problem, because it has been repeatedly held that the selection of devices from other arts may alone demand invention; merely to presuppose that the whole wealth of past achievement is available, does not detract from the skill necessary to choose out of the resulting welter. In the case at bar the elements new over Marcus which Bauer contributed in the claims in suit were the continuous movement of the gauze web and the right angle between it and the filler web. Leibing contributed both of these, and unless his machine was too remote in purpose readily to suggest itself to anyone looking to speed up the production of Marcus's machine, Bauer fails. It seems to us that a man, looking for improvements in the manufacture of such pads as Bauer's, would almost inevitably consider it wise to examine what had been done in making such pads as Leibing's. Automatic Arc Welding Co. v. Smith Corporation, 7 Cir., 60 F.2d 740; Hajek v. Radio Corporation, 7 Cir., 83 F.2d 1. Surely that was as close at hand as anything outside the immediate art could be; and once it was discovered, not much ingenuity was necessary to observe the use to which it might be put. If Leibing had appeared a long time before, we might think otherwise; just as the interval between Marcus and Bauer might justify an inference that the transition was not easy, so a long interval between Leibing and Bauer might have made us hesitate; history counts for more than anything else in judging invention. But, as we have said, there was no such interval here; Bauer appeared almost at once after Leib-

ing, and while Bauer's actual act of invention may have been authentic, we may not credit him with it; we must judge him as though he was acquainted with Leibing. As to the success of the patented machine, if the increase of speed was due to not stopping the gauze, that was true also of Leibing, who cut his wrapping strips without stopping them. But Bauer's machine apparently did not get its speed at once; it was only after the depositing mechanism was redesigned in some way not disclosed that the full output was obtained. Moreover, it is impossible to be sure that even then some part of the increased production may not have been due to the general mechanical excellence of the design; the mechanical arts improve, and an interval of twelve years may alone account for much advance. So far as we can see, Bauer's machine did not demand the sort of ingenuity which will support a patent.

Decree affirmed, so far as it holds that neither machine infringes claim 19; decree reversed, and bill dismissed for invalidity, as to claims, 1, 5, 14, 20, 21 and 31.