## ZENITH RADIO CORP.

v.

## LEHMAN.

United States District Court, S. D. New York.
May 3, 1954.

Paul Kolisch, New York City, Francis W. Crotty, Chicago, Ill., for plaintiff.

Victor D. Borst, Alan W. Borst, New York City, for defendant.

WEINFELD, District Judge.

Plaintiff Zenith Radio Corporation in this action seeks a declaratory judgment that three [1] models of hearing aids manufactured by it do not infringe Letters

---

1. The three Zenith hearing aid models, "Regent," "Royal," and "Super Royal," are fundamentally the same in design and construction, and so the accused devices will be referred to in the singular.

**70**

Patent No. 2,252,641, issued August 12th, 1941, and now owned by the defendant Charles H. Lehman, as assignee of the patent. Alternatively a judgment of invalidity of the patent is sought. The defendant has counterclaimed, charging infringement and seeks an accounting for damages.

The plaintiff moves for summary judgment on the issue of non-infringement pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the grounds that there is no genuine issue as to any material fact in respect to infringement, that as a matter of law there is no infringement, and that in view of the proceedings had in the United States Patent Office the defendant is estopped to assert such a scope of the claims as to include the accused apparatus.

Defendant's patent covers a combination.[2] It "relates to a method of transmitting speech and other sounds * * * within a limited space such as the auditorium of a cinema or theatre * * *." It is intended to assist people who are hard of hearing by providing means within a prescribed limited space in the theatre for actuating a small portable instrument used as a hearing aid. The system operates on the principle of induction. A conductor carrying an audio frequency current establishes an induction field which will induce energy in a pick-up coil positioned within that field. To carry the method into practice the patent employs a transmitting apparatus and a receiving apparatus: the transmitting apparatus to produce an induction field within a limited space; the receiving apparatus to be inductively energized by that field and to translate the energy thus picked up into audio intelligence. The method of energizing the receiver may vary. The receiver may be coupled to the induction field of the transmitting apparatus by

means of a pick-up coil or may be used as a conventional hearing device when a microphone controlled by a switch is put into position.

Zenith's hearing aid, the accused device, consists only of a receiving apparatus. It involves no transmitting unit or system. It operates much like any other known vacuum tube amplifier hearing aid with a microphone to reproduce audio signals in the earphone worn by the hearing aid user. But it is also equipped with an induction coil or a "telephone coil" and a two-position switch. When the switch is in the position of "Mike" the telephone coil is not connected and the instrument operates in the usual manner of an ordinary vacuum tube hearing aid device. Switched to the alternate position of "Tel" the telephone coil is connected to the input circuit of the hearing aid amplifier and permits the use of the instrument for telephone conversations. This is accomplished by placing the telephone transmitter in close proximity to the telephone coil of the hearing aid. As a result, the induction field present at the receiver of the telephone instrument energizes the telephone coil of the hearing aid, establishing an inductive coupling by which the received phone conversation is transmitted through the induction field, the telephone coil, and the amplifier of the hearing aid to its earphone. And it is this telephone pick-up coil of plaintiff's instrument which is at the core of the present controversy.

Plaintiff's device is accused on the basis of claims 9, 19, and 20—each one of which refers to either "base" claim 7 or 18. The defendant contends that the various receiving units with their pick-up coils, as described in claims 9, 19, and 20 stand alone as self-sufficient "sub-combinations"[3] and that Zenith's hear-

**2.** Leeds & Catlin v. Victor Talking Mach. Co., 213 U.S. 301, 318, 29 S.Ct. 495, 500, 53 L.Ed. 805: "A combination is a union of elements, which may be partly old and partly new, or wholly old or wholly new. But, whether new or old, the combina-

tion is a means—an invention—distinct from them."

**3.** A "sub-combination" is a unit or units less than the whole combination, patented and patentable per se. See, e. g., Special Equipment Co. v. Coe, 324 U.S. 370,

ing aid with its pick-up coil infringes thereon. Zenith, contrariwise, argues that those claims are "dependent" claims which incorporate both the transmitting apparatus and the receiving apparatus described in base claims 7 and 18 to which they refer. Thus, the determination of the controversy turns upon the legal effect of claims 9, 19, and 20 and the parties acknowledge that the issue of law so presented makes the matter ripe for consideration of summary judgment.[4] They agree that if the claims are read as "dependent" claims the plaintiff is entitled to summary judgment of non-infringement since it is admitted that Zenith's hearing aid does not infringe on base claims 7 and 18—the entire combination.[5] The parties are also in accord that if the claims are construed as "subcombinations," as contended for by the defendant, the motion for summary judgment must be denied since testimony would be required on the question of infringement and, if reached, of validity.[6]

Zenith predicates its contention that claim 19 is a "dependent" claim on claim 19's reference to claim 18, the "base" claim. Claim 18 calls for an "apparatus for transmitting speech" and a "portable receiver." Claim 19 refers to "A receiving apparatus as claimed in claim 18 wherein the pick-up coil is adapted to be switched on to replace the microphone of a microphonic speech amplifying apparatus." Zenith maintains that the receiving unit does not stand alone but must be read in conjunction with the whole of claim 18 and in limitation thereof. The defendant, however, emphasizes that claim 19 by its language does not claim the combination of transmitting and receiving apparatus, as specified in claim 18, but "depends from" only that part of claim 18 which defines a portable receiver—a portable receiving apparatus which normally serves as a deaf aid appliance and includes a microphone, a pick-up coil which can be used to replace the microphone, and a sound reproducing device. Accordingly, it urges that the portable receiver defined in claim 19 is a complete and independent entity, a subcombination. Similarly, claim 20 refers to claim 18, claim 9 makes reference to claim 7, and Zenith and defendant make the same arguments.

At the threshhold it is noted the defendant concedes, as it must, that the form of claim here in issue is without precedent and has never been judicially sanctioned. Neither does the defendant dispute plaintiff's contention that the Courts and Patent Office have never construed "dependent" claims to include less than the entire combination of elements recited in the base claim.

Out of context, claims 9, 19, and 20 would appear to make reference to but the receiving units of the base claims. But terms of patents do not stand by themselves; as in any contract, they must be read in context and with reference to the intent of the parties.[7] The

65 S.Ct. 741, 89 L.Ed. 1006; Thomson-Houston Electric Co. v. Black River Traction Co., 2 Cir., 135 F. 759, 763; Revere Camera Co. v. Eastman Kodak Co., 7 Cir., 172 F.2d 162, 165.

4. See Park-In Theatres, Inc. v. Perkins, 9 Cir., 190 F.2d 137, 141–142; Bulldog Electric Products Co. v. Cole Electric Products Co., 2 Cir., 148 F.2d 792, 794.

5. See Corn-planter Patent, 90 Wall. 181, 23 Wall. 181, 224, 23 L.Ed. 161; Schumacher v. Cornell, 96 U.S. 549, 554, 24 L.Ed. 676; Rowell v. Lindsay, 113 U.S. 97, 101, 5 S.Ct. 507, 28 L.Ed. 906; Special Equipment Co. v. Coe, 324 U.S. 370, 376, 65 S.Ct. 741, 89 L.Ed. 1006.

6. Cf. Bridgeport Brass Co. v. Bostwick Laboratories, Inc., 2 Cir., 181 F.2d 315; Engineering Development Laboratories v. Radio Corporation of America, 2 Cir., 153 F.2d 523.

7. See, e. g., I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335; Hogg v. Emerson, 6 How. 437, 47 U.S. 437, 482, 12 L.Ed. 505; International Banding Mach. Co. v. American Bander Co., Inc., 2 Cir., 9 F.2d 606, 608; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389, 394; Allen v. Wingerter, 3 Cir., 17 F.2d 745, 748; Tschappat v. Hinderliter Tool Co., 10 Cir., 98 F.2d 994, 998; Jensen-Salsbery Lab. v. O. M. Franklin B. Serum Co., 10 Cir., 72 F.2d 15, 19.

opening statement of the patent, the specifications, and the system described in the base claims make interpretation of the claims in question much more difficult than would appear at first blush.[8] The patent is entitled "Method of and Apparatus for the Transmission of Speech or other sounds." The specification begins:

> "The invention relates to a method of transmitting speech and other sounds, including recorded speech and sounds, within a limited space such as the auditorium of a cinema or theatre, or a sports arena; and to transmitting apparatus and receiving apparatus for carrying the method into practice. * * *"

The specification goes on to detail the system—its components and the best location of the units in the system. The "base" claims 7 and 18 read:

> "An apparatus for transmitting speech and other sounds throughout a limited space by electromagnetic induction, comprising a thermionic amplifier, a looped conductor that extends within the area over which transmission is to take place and consists of a plurality of loops with certain loops arranged so that the flow of current therein is in a clockwise direction and the other loops arranged so that the flow of current therein is in a counter-clockwise direction, and a portable receiving device compromising a thermionic amplifier, a pick-up coil arranged in a low frequency input stage of said

thermionic amplifier, and a sound reproducing device."

Furthermore, the usual practice of the Patent Office runs counter to what is urged here by the defendant. The Patent Office has never explicitly approved the practice of having a claim refer to but part of another claim. The usual "dependent" claim is of comparatively recent vintage and has had limited sanction. It is of British origin and was first allowed in 1917 by the Commissioner of Patents for the United States Patent Office in Ex parte Brown, 1917, C.D. 22, 235 O.G. 1355. Subsequent decisions restricted an applicant from building one dependent claim upon another; each dependent claim had to refer to a base claim.[9] And in all instances since its inception the dependent claim has been construed to embody all the elements of the parent claim to which it refers and has been deemed a limitation grafted on the parent or "base" claim. These rulings are, in fact, now codified in Rule 75(c) of the Rules of Practice of the Patent Office.[10] Thus, a fair assumption in light of the existing and then existing practice is that, had the claims been presented as other than conventional dependent claims, they would have been rejected much as were similar claims in Ex parte Hansen, 99 U.S. P.Q. 319.[11] In view of this, of the novelty of their form, and of the context in which they are to be read, claims 9, 19, and 20 are not unambiguous; the intent of the parties is far from clear.

8. See Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132, opinion amended and rehearing denied, 312 U.S. 654, 61 S.Ct. 235; Parke, Davis & Co. v. American Cyanamid Co., 6 Cir., 207 F.2d 571, 573.

9. Ex parte Holst and Leers, 1918, C.D. 44, 253 O.G. 953; Ex parte Hill, 1924, C.D. 21, 319 O.G. 707. See Ex parte Hansen, 99 U.S.P.Q. 319.

10. Rule 75(c)—"When more than one claim is presented, they may be placed in dependent form in which a claim may refer back to and further restrict a single

preceding claim." 37 C.F.R. § 1.75(c), 35 U.S.C.A.Appendix. The rule was passed after the patent in this case was issued.

11. In the Hansen case the Patent Office Board of Appeals was of the opinion that claims with reference similar to the ones here in question "do not particularly point out the subject matter which appellant regards as his invention as required by Section 112 of Title 35 U.S.C." The need for strict compliance with the statutory command is stressed in General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 368–369, 58 S.Ct. 899, 82 L.Ed. 1402.

■ Under the circumstances, reference to the file wrapper may be had to give the claims "the meaning which was intended by the applicant and understood by the examiner." [12] However, in so doing, I am mindful of the rule in this Circuit that "in the consideration of a file wrapper we do not look at the arguments of the applicant to the examiner." [13] Accordingly, I confine my inquiry to claims, rejections, abandonments, and amendments.

The genesis of claims 9, 19, and 20 was application claims 14, 15, 16, and 18. Application claim 14 read: "A receiving apparatus as claimed in claim 13, wherein a microphonic speech amplifying apparatus, which normally serves as a deaf aid appliance, has provision for plugging in a pick-up coil in place of or in addition to the microphone." Claim 13 read: "A receiving apparatus for receiving signals according to the method claimed in Claim 1, wherein a pick-up coil is arranged in a low frequency input stage of a thermionic amplifier." Claims 15, 16, and 18 all similarly referred back to claim 14. Since claim 13 referred to claim 1, all the claims tied up eventually to claim 1. Claim 1 contained a very general description of the whole system: "A method of transmitting speech and other sounds throughout a limited space, wherein a transmitting conductor carrying an undulatory current of audio frequency energises by means of induction a receiving apparatus situated within such space." Claims 13, 14, 15, 16, and

18 were rejected as "informal in that they *depend* upon more than one claim." [14] The applicants were advised that the claims "should be rewritten to conform to the Rules of Practice of this office." Obviously, the basis of the rejection by the Examiner was the policy and practice of the Patent Office which disallows *dependent* claims when they are linked to another *dependent* claim instead of referring directly to a base claim.[15] Moreover, all claims were rejected "as based on a vague and indefinite disclosure."[16]

The patentee then amended and reapplied. Claim 14 was changed; the reference in claim 14 to 13 was eliminated. It opened: "An apparatus for receiving speech and other sound in a limited space by electro-magnetic induction * * *." Claims 15, 16, and 18 still had the reference back to "A receiving apparatus as claimed in 14." But 14 stood alone. The Examiner, in fact, treated 14 as an independent and self-sufficient claim and rejected it "as substantially met" by a prior patent.[17] The language of claims 15, 16, and 18—almost the identical language now in question—was considered as stating a dependent claim from claim 14 since those claims were rejected on the ground that "* * * they *rely* for their novelty upon obviously unpatentable claims."[18]

The patentee tried again. Claims 13, 14, 15, 16, and 18 were all cancelled. New claim 43 corresponded substantially to old claims 13 and 14 and described the

12. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 442, 47 S.Ct. 136, 140, 71 L.Ed. 335; see also Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 227–228, 26 L.Ed. 149; Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132.

    United Chromium, Inc., v. International Silver Co., 2 Cir., 60 F.2d 913; International Cellucotton Products Co. v. Sterilek Co., Inc., 2 Cir., 94 F.2d 10; Hutzler Bros. Co. v. Sales Affiliates, Inc., 4 Cir., 164 F.2d 260, cited by defendant, have no application to the present case. We deal here with giving the proper construction to the claims since their language is unclear. Those cases are concerned with giving a patentee broad leeway within his claims to prove advancement over prior art on the question of validity, but only once the scope of his claims has been determined and, in fact, narrowed.

13. A. G. Spalding & Bros. v. John, 2 Cir., 256 F. 530, 533; Catalin Corp. v. Catalazuli Mfg. Co., 2 Cir., 79 F.2d 593; Katz v. Horni Signal Mfg. Co., 2 Cir., 145 F.2d 961.

14. File wrapper, p. 21; emphasis supplied.

15. Ex parte Hill, (1924) C.D. 21, 319 O.G. 707; now crystallized by Rule 75(c).

16. File wrapper, p. 21.

17. File wrapper, p. 31.

18. Ibid; emphasis supplied.

entire system. Claim 45 restated in haec verba claim 18 and the reference to a prior claim was maintained with the phrase "A receiving apparatus according to claim 43 * * *." Claims 15 and 16 became 55 and 56, and both similarly began with a reference to the receiving unit of claim 54. Claim 54 described the whole system.

Claims 43, 45, 54, 55, and 56 were rejected on the "same grounds set forth in the rejection of claims 27 to 29."[19] It is significant that 27 detailed the whole system, and 28 and 29 were claims on the system with variations in the "transmitting conductor." The rejection of 27 to 29 was on the basis of prior patents on the system.[20] Thus, there can be no doubt that claims 45, 55, and 56 were considered as "dependent" claims embodying the whole system.

The patentee amended still another time. This last application seals the construction which is to be given the questioned claims. Claims 43 and 54 (now numbered 7 and 18) only were changed—principally by a very explicit and exact description of the loops in the conducting circuit. Claims 45, 55, and 56 were untouched. However, not only were 43 and 54 allowed, but claims 45, 55, and 56 were also allowed. If claims 45, 55, and 56 (now numbered 9, 19, and 20) were considered as independent claims of sub-combination why did they wait upon the acceptance of 43 and 54? The answer must be—in view of the final changes in 43 and 54 of an element outside the receiving unit—that 44, 55, and 56 were *not* considered as sub-combination claims but as dependent claims.

The record compels the conclusion that the base claims 7 and 18 would not have been granted without the particular loop arrangement and that claims 9, 19, and 20 were granted only after it was made to appear they were dependent upon the base claims. And this conclusion does not rest upon the repeated reference by the applicant to such claims as "dependent" claims throughout their history of submission, rejection, amendment and ultimate acceptance.

Finally, the file wrapper discloses, as noted previously, that at one point a claim on the receiving unit—then numbered 14—was presented as an independent claim without reference to any previous claim. It was presented apparently as a sub-combination. The Examiner rejected that claim on the basis of prior art; the patentee then upon amendment cancelled the claim and never again attemped to state any form of receiving unit without a reference to another claim. It is apparent that the patentee acquiesced in and understood the construction placed upon the claims —that is, the Examiner was allowing only dependent claims. This case comes within the general principle stated in Morgan Envelope Co. v. Albany Paper Co., 152 U.S. 425, 429, 14 S.Ct. 627, 629, 38 L.Ed. 500:

> " * * * But, the patentee having once presented his claim in that form, and the patent office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim or such a construction of his present claim as would be equivalent thereto. * * * " [21]

Since upon the record it appears that the claims in issue are to be read as dependent claims and the defendant admits that there is no infringement of the base claims from which they depend and that no triable issue of fact

---

19. File wrapper, p. 47.

20. The Examiner stated his reasons: "While Kear has not found it necessary to use a thermionic amplifier in his system, he obviously could without involving invention, and his metallic rectifier could be replaced by a suitable thermal sensitive resistance without involving invention. Espenschief, cited, is one of many showing that it is old to use an amplifier in an induction pick-up." File wrapper, p. 46.

21. See also Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220, 312 U. S. 654, 61 S.Ct. 235, 85 L.Ed. 132, and cases therein cited.

exists when the disputed claims are read as dependent claims, Zenith's motion for summary judgment must be granted.

Settle order on notice.