**Robert H. MESINGER and Mesinger Manufacturing Co., Inc., Plaintiffs,**

v.

**WESTERN AUTO SUPPLY CO. et al., Defendants.**

**No. 72-1400-Civ-CF.**

United States District Court, S. D. Florida.

April 29, 1974.

Mattern, Ware & Davis, Bridgeport, Conn., and McCune, Hiaasen, Crum, Ferris & Gardner, P. A., Fort Lauderdale, Fla., for plaintiffs.

John R. Walker, III, Memphis, Tenn., and Burns & Weber, West Palm Beach, Fla., for defendants.

## MEMORANDUM OPINION

FULTON, Chief Judge.

These two tycoons in the bicycle seat manufacturing business are not humming that old refrain, "A Bicycle Built

for Two." Instead, each is anxiously trying to unseat the other.

Robert H. Mesinger was issued United States Patent 3,077,363 and thereafter assigned that patent for the manufacture of bicycle seats to Mesinger Manufacturing Company. Mesinger claims that Troxel Manufacturing Company has infringed that patent. By answer and counterclaim, Troxel challenges the validity of the patent and denies infringement, especially urging "File Wrapper Estoppel."

The construction of a bicycle seat would appear to be very simple to comprehend. However, the mechanical descriptions and legal arguments have complicated this controversy for the undersigned, who undertook the problem with no more knowledge than how to mount and pedal.

## BACKGROUND

The plaintiffs, Robert H. Mesinger and Mesinger Manufacturing Co., Inc., are respectively the patentee and licensee of the patent in suit, No. 3,077,363. This patent was issued on February 12, 1963, and will hereinafter be referred to as the "patent in suit."

The original patent application was filed on November 16, 1953. Its claims were quite broad. That application was denied by the Patent Office on several occasions. Finally, on January 22, 1957, the application for the patent in suit was filed, after which the earlier patent application was abandoned. The latest application contained three claims. After several amendments, the patent was granted. Claim No. 1 of the patent in suit, after the application had been amended, is representative of the other two claims, all three of which read substantially as follows:

1: A unitary top cover for cycle saddles having an under frame including a top support, said top cover comprising a generally triangular seat portion with a forwardly extending nose portion, downwardly depending side and front skirt portions formed integral with the seat and nose portions, a downwardly depending rear flange, a transverse web integral with and interconnecting the forward portions of said side skirt portions and said front skirt portion and adapted to enclose the forward end of said top support, and web portions integral with and interconnecting the rear portions of said side skirts with said rear flange said web portions being adapted for engagement around at least the rear corner portions of said top support, *each of said web portions comprising two parts, the one part being joined to the side skirt and extending upward for a sufficient distance parallel to the side skirt to form therewith a pocket for receiving downturned rear ends of the frame, and the other portion in the form of a gusset joining the lower rim of the rear flange, the one part, and the side skirt,* the free edges of said webs with portions of said skirts and rear flange defining a bottom opening which is smaller in area than said seat portion, said unitary top cover being constituted of substantially homogenous heat cured plastic composition.

The portion of the foregoing quoted claim which is underlined is that portion of the three claims of the patent in suit which was added to the original application by amendment, and which resulted in the approval of the application and the granting of the patent. Mesinger's application which did not contain the underlined words was denied because it read on prior art, particularly a German patent, No. 827,289, known as the Kruger patent, and a patent held by the defendant, Troxel Manufacturing Company, No. 2,011,842, known as the Brandt patent. That portion of each claim, which was added and which is above underlined, was held by the Patent Office to describe a concept which was new, useful and non-obvious. By reference to the quoted claim, it will be noted that the patent as granted describes each of the "web portions" at the rear corners of the saddle as having two

distinct parts, one of which parts forms a pocket and the other of which forms a gusset. The patentee contends that these two parts working together and with the nose or leading portion of the saddle form a three point triangular gripping action which holds the unitary molded plastic saddled top securely on a triangular seat frame, without any rivets or grommets—and that this construction concept provides a unitary plastic top over a metal frame which entirely eliminated stitching, gluing, and rivots, and increased the comfort and utility of the seat and extended its period of usefulness.

## DEFENSES AND COUNTERCLAIM

Plaintiffs originally instituted this action against Western Auto Supply Co. and E. A. Carter d/b/a Carter's Western Auto Store in Delray Beach, Florida. Troxel Manufacturing Company intervened as defendant without objection. Troxel had manufactured and sold to the original defendants the seats which plaintiffs accused of infringement. Hence, Troxel is the real party in interest and has since its intervention defended against the complaint and asserted the counterclaim. Troxel categorically denied the allegations of the complaint charging infringement and attacks the validity of the patent on a variety of grounds, principally asserting File Wrapper Estoppel.

In those cases involving both a charge of infringement and invalidity, the Supreme Court of the United States and the Court of Appeals for the Fifth Circuit have admonished trial judges not to make a disposition on the infringement issue without first resolving the issue of validity because, of the two issues, validity is of greater public importance. Accordingly, we shall first consider and rule upon the validity of the patent in suit.

## VALIDITY

We start with the premise that a lawfully issued patent is presumed to be valid, Railex Corporation v. Speed Check Co., 457 F.2d 1040, 1043 (5 Cir. 1972). Thus, the burden of establishing the invalidity of a patent rests upon a party asserting its invalidity, 35 U.S.C. § 282. Although the presumption of validity is rebuttable, the Court of Appeals of this Circuit has recognized this burden of proof to be akin to the fraud standard of clear and convincing evidence and the criminal law standard of proof beyond a reasonable doubt. As a minimum this Circuit requires greater proof than a mere preponderance of the evidence, Hobbs v. United States, Atomic Energy Comm., 451 F.2d 849 (5 Cir. 1971); Stamicarbon, N.V. v. Escambia Chemical Corp., 430 F.2d 920, Fifth Circuit, cert. den. 400 U.S. 944, 91 S.Ct. 345, 27 L.Ed.2d 248 (1970).

The record in this case describes the fabrication problems, the installation difficulties, and the production costs inherent in the production of bicycle seats which required gluing, stitching, rivoting, grommeting, or the adoption of other means to hold the cover in place on the seat frame.

In 1952 the patentee began sketching and modeling plastic topped seats to overcome prior difficulties and high costs of production. He sought to design an inexpensive saddle top which could hold itself in place while providing flexible cushioning support for the rider's comfort. Finally, after a long period of experimentation and a series of failures in the Patent Office, his application, as amended by including the two part construction described and defined in the quoted claim of the patent, was granted. The Mesinger Company, as assignee of the patent, began the manufacture and sale of seats under the patent with broad acceptance and financial success. Although neither the long and unsuccessful effort of others to improve the then existing art nor the wide commercial success of the patented device are controlling as to validity, both may be and have been considered.

In order to visualize the two parts which comprise the web portions at the rear corners of the bicycle seat and to

understand the rear corner construction and how the seat is to be mounted upon the frame without the necessity of rivets, gromments or additional fasteners, reference must be made to Figures 3 and 5 as they appear upon the application which was granted, and by making reference to pages 36–44 of the transcript and the various exhibits which are there mentioned and discussed.

■ Obviously, it was the amendment *to each claim, as shown by that portion* of the cited claim which is underlined, which in the judgment of the Patent Office made the patent applied for novel, useful, and non-obvious. Troxel has not demonstrated that the patented device was obvious, by even a preponderance of the evidence. No satisfactory argument can be made that the patented device was not new and useful. For these reasons, and without further detail, this Court finds and rules that the patent in suit is a valid and enforceable patent.

■ In arriving at this decision, the Court has not ignored the defendants' assertion of File Wrapper Estoppel. It is true that in the course of the prosecution of the patent in suit, the patent examiner disallowed applicant's earlier claims as reading on prior art. However, the applicant continued to press his application by amending and changing the same, with the result that the Patent Office finally approved and granted the applicant's voluntary modification. The changing of his claims furnishes no basis in fact or reason for inferring that the applicant thereby admitted the invalidity of his patent as issued, International Cellucotton Products Co. v. Sterilek Co., 94 F.2d 10 (2 Cir. 1938). The action of a patent applicant in voluntarily narrowing his claim to conform to the opinion of the patent examiner furnishes no basis for inferring that he thereby admitted the invalidity of his patent as issued, in whole or in part, Ingersoll-Rand Company v. Brunner & Lay, Inc., 474 F.2d 491 (5 Cir. 1973). A further discussion of this subject at this juncture is not indicated because of the, Court's finding hereafter that the patent in suit has not been infringed.

## INFRINGEMENT

Troxel makes reference to that portion of the above cited claim which is underlined as "crucial amendments." They are indeed crucial to the patent in suit because the patent obviously would not have been issued without the addition of the underlined portion. In the underlined portion, one part was defined as extending upward parallel to the side skirt to form therewith a pocket for receiving the downturned rear ends of the frame; and the other or second part, which is referred to as the gusset, was defined as that part which joins the lower end of the rear flange and the side skirt. Thus, the two parts which were vital to the issuance of the patent may be referred to herein as the "pocket" and the "gusset."

Plaintiffs accused Troxel's seat models Nos. 33 and 37 as having infringed plaintiffs' patent. Model 33 was received in evidence as defendants' Exhibit No. 7 and Model 37 was received in evidence as defendants' Exhibit No. 6. They are essentially the same, except for size, shape and styling. Defendants' Exhibit 6 is a racing seat and defendants' Exhibit 7 is a touring seat. Each of these seats contains clips or fasteners that attach tightly the rear flange of the seat cover against the rear flange of the metal frame of the seat. Troxel contends that these clips serve two functions; to prevent the seat cover from coming off the frame and to provide a tool kit or a bag holder. The plaintiffs contend that the clips are not necessary to hold the cover upon the frame and serve no useful purpose, except to provide a tool kit. The Court is inclined to agree with the plaintiffs in this respect but considers this aspect of the controversy to be of little significance.

The important and vital consideration with respect to the issue of whether the defendant has infringed plaintiffs' patent is the total absence from the accused saddles of a gusset. During the trial of

this cause, which commenced on May 29 and continued through June 1, 1973, counsel for the plaintiffs spent considerable time in trying to demonstrate in connection with the accused saddles a gusset, unsuccessfully. This Court has been unable to visualize a gusset in the construction of the accused saddles, such as is described by the claims of the patent in suit. In fact, the accused saddles contain no gusset. As contrasted with the base or frame of the patent in suit, which does not have a flange around the entire periphery thereof, the solid metal base of the accused saddles has a downturned rim or flange all around the periphery and the seat cover has a continuous one-piece portion around the edge which forms a continuous pocket, into which closely fits the downturned rim of the metal base. Therefore, the flanges of the accused saddles are strictly a one-part construction and neither of them has the second part, which is described and referred to in the patent in suit as the gusset.

■■■ Infringement exists only where the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished, American Seating Co. v. Southeastern Metals Co., 412 F.2d 756, 761 (5 Cir. 1969). The plaintiffs have the burden of proving identity of means, operation and result, Foster Cathead Co. v. Hasha, 382 F.2d 761 (5 Cir. 1967). Plaintiffs have not assumed and discharged that burden of proof in this case. There is no infringement of the patent in suit by the defendants because the structures are different. The patent in suit provides for a two-part web construction, one of which forms a pocket and the other of which forms a gusset. The accused saddles have only the pocket and possess no gusset.

■■ In determining the issue of infringement, the Court has not been unmindful of plaintiffs' claim of a right to prevail because of the doctrine of equivalents. In patents which involve a combination, as here, the combination is an entity. A patentee cannot abandon a part of a combination and claim the rest, nor can he be permitted to prove that a part is useless and therefore immaterial. A patentee must stand by his claim as he made it. Consequently, if more or less than the whole of his ingredients are used by another, such other party is not liable as an infringer, simply because he has not used the invention which was patented. With a change of elements or parts, the identity of the product disappears. To constitute infringement, the elements combined must be the same, and combined in the same way, so that each element performs the same function to accomplish the same purpose, 40 Am.Jur. Patents § 163. The accused devices do not have an element which is substituted for and performs the same function of the gusset described in the claims of the patent in suit. There simply is no gusset, nor a substitute therefor, nor an equivalent thereof. For that simple and obvious reason the doctrine of equivalents cannot be successfully urged in this case.

## CONCLUSION

For the reasons stated, this Court finds and concludes that the patent in suit is a validly issued and enforceable patent; but that it has not been infringed by Troxel's Models 33 or 37. Counsel for Troxel shall promptly prepare and submit to the Court an appropriate Order or Judgment form which will dismiss this cause at the cost of and with prejudice to plaintiffs.