## BAKER PERKINS CO., Inc., v. THOMAS ROULSTON, Inc.

### No. 145.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

510

Merrell E. Clark and J. B. Cunningham, both of New York City, for appellant.

Drury W. Cooper and C. Blake Townsend, both of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, a New York corporation, which as assignee owns all right and title to United States letters patent No. 1,771,020, brought suit for infringement of that patent against the defendant, another New York corporation, whose principal place of business is located in the Eastern district of New York.

The patent, granted to Thurn and Engels, July 22, 1930, is for a traveling-tray oven designed for baking food products and more especially relates to the baking of bread. The oven claimed to infringe was used by the defendant to bake bread; was purchased by it of the Petersen Oven Company of Chicago which openly defended this suit; and was used at the defendant's premises in Brooklyn, N. Y.

The advantages which were considered attainable by this patent over what had gone before related to a practical separation of what is called loaf-conditioning and bake-finishing so that the first was virtually carried to completion in a conditioning chamber before the latter commenced. This feature is well set forth in the following quotation from the specifications:

"So far as we are aware, conditioning and finishing have not heretofore been definitely segregated in ovens of the horizontal or vertical and multiple-pass, traveling-tray type, but usually the two operations have been mixed and allowed to occur more or less together. The result, oven control that is inherently imperfect, has prevented the general adoption of ovens of the multiple pass tray type for use in small and medium capacity general purpose bakeries. Such plants must produce various goods, requiring an oven adaptable to many kinds of loaf treatment.

"This invention enables the baker to produce from one oven any desired kind of goods, for he can properly apportion the supply of heat, the relative humidity and the baking time in each of the various chambers or passes. If he desires a loaf with large volume and a glossy top he can increase the humidity in the conditioning chamber, decrease the burner heat, and by changing the rate of tray travel, can lengthen the baking time.

"To change to a small volume, dull crust loaf, he decreases humidity, increases burner heat and slightly shortens baking time. For pound cake he increases both humidity and heat supply in the conditioning chamber and lengthens the baking time. Moreover, he can quickly re-adapt the functioning of the various passes of this oven from the requirements of white bread to those of rye or so-called hearth bread, or cakes, biscuits and other products. Any combination of such changes is easily brought about in a few minutes in an oven having the improvements herein described."

And what is meant by loaf-conditioning and by bake-finishing is defined by the specifications:

"Loaf-conditioning as the term is here used, is the conversion of a piece of proofed dough into a loaf that is virtually sized, shaped and preheated, but unbaked. Bake-finishing is the conversion of the conditioned loaf into a finished article by baking."

The oven of the patent has a slowly moving chain conveyor equipped to carry trays of dough which so closely follow one another as to form a continuous line of material when the oven is in operation. There are pulleys over which the conveyor passes to change its course through the oven to carry the dough first through the conditioning chamber; then up and on through the bake-finishing stage by carrying it back toward the front of the oven over the conditioning chamber; then up again and on to the back of the oven; then down and toward the front again to appear as fully baked bread at a point near the original place of entry where the same operator who puts in the dough takes out the bread.

After the dough leaves the conditioning chamber, there is nothing new about what happens to it in the rest of the oven which it traverses by means of the rather ingeniously arranged conveyor system. Heat at the required temperature to finish baking it by the time it arrives at the exit is applied by gas burners to the parts of the oven through

which it passes. Of course bread baking goes back into the haze of antiquity, and baking on a conveyor moving in an oven is itself admittedly old.

The construction of the conditioning chamber is, however, interesting, and it is there that whatever novelty there is in this patent resides. As is generally known, the dough which ultimately is baked into bread is mixed with yeast to "raise" it. The increase in the size of the dough as it passes through the conditioning chamber is primarily due and theoretically, at least, entirely due to the action of the yeast. While it may be that in the patented oven some expansion there takes place because of the independent action of heat, it is at best slight and may be ignored. In practice, the yeast continues to expand the dough until a point is reached where the temperature is high enough to kill it. After that there is still some expansion, since the dough contains moisture to be affected by the high temperature.

The patent teaches that results approach the ideal when the conditioning is to all intents and purposes completed in the first chamber. To aid in bringing that about, this chamber is placed about midway between the top and bottom of the oven, and is permitted to extend only part way toward the back. Thus it is surrounded on three sides by the baking spaces proper and the heat they contain. It has an inlet for steam with which the dough is "doused" with moisture externally soon after entering it, and has two flanges or baffles, one near the entrance and one near the back, depending from what may be called its roof, which serve to create an inverted pocket into which the steam ascends where it is held in a quiescent state while the dough slowly moves on the conveyor under the first baffle; then up, into, and through the steam at rest; then down and out underneath the second baffle to the beginning of the bake-finishing process in the next chamber. There is a vent near the front of the conditioning chamber and apparently another at the front top of the oven in the baking portion, but we are told that drafts are not created to disturb the steam in the inverted pocket and accept that as being proved by the evidence. It is this inverted pocket construction with its attendant holding of the steam without motion that brings about whatever advance this patent discloses over the prior art.

The oven claimed to infringe has most of the features of the oven the plaintiff manufactures under the patent. Heat is supplied to it by being blown into it from without instead of by means of gas burners in the oven itself. Yet it has a chamber located in the same space relatively as that of the patent with a roof sloping up from either end toward a high point near the center; uses a conveyor system; and is so like the plaintiff's oven in general that at first glance it seems to be in reality a copy. When the structure of what is claimed to be its conditioning chamber is studied in connection with the proof, however, fundamental differences appear. First, there is no way, in view of the sloping sides of the roof, to prevent steam gathering against it being put in motion by drafts. The trial court found on evidence which was reasonable and ample to that end that there is a continuous draft in the defendant's oven flowing in a direction opposite to the direction of the conveyor in all the passes of the oven, and that this air current, passing through the first chamber of the oven, has its outlet at the loading aperture. It was also found that there was no neutral draft zone; which means that there was no quiescent steam pocketed in the first chamber. If the bottom of what is all that may possibly be taken to be an inverted pocket in the first chamber of the defendant's oven is visualized as in a plane extending from the low point of the sloping roof near one end to the low point near the other, and there seems to be no other way to consider it, it becomes at once apparent that the court was right in finding that there was no steam held at rest in a pocket. Moreover, the object which the patent makes of paramount importance is the result of the trapping of quiescent steam. It is the virtual separation of proof conditioning from bake-finishing. It is certain that in the defendant's oven the dough is not brought to its final size in the first chamber. Nor do we think that when the fact is qualified by whatever elasticity there may be in the word "virtually" does conditioning end there. Whatever the state of the steam may be in the first chamber of both ovens is largely a matter of theory, but the point in the oven at which the loaf reaches its final size is capable of being determined with substantial accuracy. That the defendant's oven does not accomplish the result which the patent shows is to be obtained by using its construction is persuasive proof that its construction has not been used. And so we agree with the court below that the defendant's oven does not separate loaf-conditioning from bake-finishing, as defined by the specifications of the patent, into successive stages, but does

both simultaneously at least during the passage of the dough through a portion of the first chamber and the next.

The claims relied on are 4 to 8, inclusive, 13, 17 to 23, inclusive, and 25. Of these, 4, 5, 6, 7, 8, 17, 18, and 25 are all based in part upon the conditioning chamber of the patent which we do not find in the defendant's oven and for that reason are not infringed.

Claims 13, 19, 20, 21, 22, and 23 do not rely upon a conditioning chamber. They are:

"13. In a traveling tray bake oven, an initial pass, an inverted pocket extending part way only the length of said first pass along its ceiling, means for introducing vapor into the pocket, means for introducing steam into the pass in advance of the pocket, means for heating the pass and pocket, a vapor outlet communicating with the introductory part of said pass at a place ahead of said pocket, and conveyor means for moving goods while traveling through said pass into, through and out of contact with a body of vapor contained in said pocket."

"19. In a bake oven having a loading aperture in the front wall thereof, a substantially horizontal partition extending from the front wall rearwardly toward the rear wall, a second partition beneath and spaced from said first-mentioned partition and extending rearwardly from a point adjacent the front wall and the bottom of the loading aperture, conveying means operated between said partitions and in circuitous paths within the oven outside the chamber defined by said partitions, heating elements between said partitions; humidifying means arranged to supply moisture to the material on the conveyor in the space between the partitions.

"20. In a bake oven having a loading aperture in the front wall thereof, a substantially horizontal partition extending from the front wall rearwardly toward the rear wall, a second partition beneath and spaced from said first-mentioned partition and extending from a point adjacent the front wall and the bottom of the loading aperture rearwardly to a point in the oven beyond the end of the upper partition, conveying means operated between said partitions and in circuitous paths within the oven outside the chamber defined by said partitions, heating elements between said partitions and disposed beneath conveyor therein, and humidifying means arranged to supply moisture to the material on the conveyor in the space between the partitions.

"21. In a bake oven having a loading aperture in the front wall thereof, a substantially horizontal partition extending from the front wall rearwardly toward the rear wall, a second partition beneath and spaced from said first-mentioned partition and extending from a point adjacent the front wall and loading aperture rearwardly to a point in the oven beyond the end of the upper partition, an upstanding baffle wall arising from the lower partition, conveying means operated between said partitions and in circuitous paths within the oven above the upper partition, thence downward near the rear wall of the oven and between said rear wall and said baffle wall, and thence forwardly beneath the lower partition to said aperture.

"22. In combination, a bake oven having a loading aperture in the front wall thereof, a substantially horizontal partition extending from the front wall rearwardly, a second partition beneath and spaced from said first-mentioned partition and extending from a location adjacent the loading aperture rearwardly to a place in the oven beyond the end of the upper partition, an upstanding partition located at the rear part of the said lower partition and projecting above the level of the second partition and spaced from the rear wall of the oven, conveying means operated between said horizontal partitions and in circuitous paths within the oven above the second partition, thence downward between the rear wall of the oven and said upstanding partition and finally forwardly beneath the lower partition to said aperture.

"23. A structure as set forth in claim 22 wherein a third substantially horizontal partition extends forwardly from the upper part of the upstanding partition defining with the first mentioned partition and the ceiling of the oven two chambers in each of which heating elements are located near the bottom and through which the conveyor passes successively."

These claims are all, with the exception of 13, which expressly covers the disclosed inverted pocket not used by the defendant and so not infringed, broad enough to read upon the defendant's oven, but for that very reason spread beyond the field that is new as disclosed by the specifications. Unless they are held to the invention of the patent, and that means held to a construction which brings about a separation of loaf-conditioning from bake-finishing by means of a conditioning chamber holding quiescent steam in an inverted pocket at the top of it, they are foreign to whatever advance in the art was made by the patentees. It is not enough to

show that the language of these claims applies to the defendant's oven. Edison v. American Mutoscope & Biograph Co. (C. C. A.) 151 F. 767; Electro-Dynamic Co. v. United States Light & Heat Corp. (C. C. A.) 278 F. 80; Grubman Engineering & Mfg. Co. v. Goldberger (C. C. A.) 47 F.(2d) 151. The real test is found in how far the way the patent teaches the desired result may be accomplished has been followed by the defendant. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136. Claims can be no broader than the invention as disclosed. Burroughs Adding Mach. Co. v. Felt & Tarrant Mfg. Co. (C. C. A.) 243 F. 861. For something new must be disclosed before it can be claimed, and so there is nothing to be claimed except what has been disclosed. As the defendant's oven was not shown to possess any new feature of the patent, no claim of the patent was proved to be infringed. Compare Westinghouse El. & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 354, 45 S. Ct. 117, 69 L. Ed. 316; Westinghouse Air Brake Co. v. New York Air Brake Co. (C. C. A.) 119 F. 874, 884.

Decree affirmed.