## CARL BRAUN, Inc., v. KENDALL–LAMAR CORPORATION.

### No. 30.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1941.

Ralph E. Slayton, of New York City, for plaintiff-appellant.

Mock & Blum, of New York City, for defendant-appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff is the owner of Patent No. 2,017,941 for a device for cleaning receptacles which was granted October 22, 1935, on the application of Carl Braun filed January 4, 1927. The apparatus is useful for cleaning and sterilizing milk cans and their covers and, as the alleged infringement is by a machine used for that purpose, it will serve present needs to ignore other possible uses. Nor is it necessary to describe the apparatus in detail as the claimed infringement relates only to the discharging end where milk cans are placed in position to receive, and do receive, their covers and are then pushed out of the way of those which follow.

Uncovered milk cans are placed bottom side up on a conveyer at the receiving end of the machine and from there on the operations are automatic. They are carried through it with intermittent stops where the cleaning fluid and sterilizing agents are forced into and upon them and where they are then dried. A can comes through to the discharging end clean and dry but has to be turned over to stand upon its base and moved sideways to be in position to receive a cover that has also come through the machine on a conveyer beside that of the can and has been similarly washed, sterilized and dried. As the can reaches the end of the conveyer with its neck down, it is carried on until the neck goes into a C-shaped flexible collar attached to a power driven cross-shaft which turns the can, gripped at its neck by the collar, over to its upright position and moves it sideways and lowers it to a point where its top is under the discharge end of the cover bearing guideway. Then a cover, released by a trip arm actuated by the can, drops off its conveyer into the top of the can and the can so covered is kicked off by a power driven arm to an incline down which it slides by gravity. The distinctive characteristics of the patented way to place the cans upright and put covers upon them are found in the C-shaped collar which engages the neck and is aided considerably in the turning movement by the weight of the can unbalanced as it is when held by the neck and in the sideway movement to bring the can over and under the end of the cover conveyer which runs parallel to the can conveyer and in the same horizontal plane.

The patented machine was not the first power driven automatic one for cleaning

and drying cans and covers simultaneously and automatically putting the covers upon the cans at the outlet end. The Lathrop-Paulson Company made one in 1918 and until 1926 was the only company making automatic milk can washers and assemblers. That washer had a guideway for cans which were carried along it in an inverted position by an intermittently operated conveyer where they were cleansed and dried and from which they fell, at the discharging end, into a pivoted cradle which turned by gravity to swing the can to an upright position from where it could slide down an inclined runway. The covers were fed into another guideway directly above that for the cans and when washed and dried came out at the discharging end above the cans. When a can was turned to its upright position it would be held an instant while a cover fell into its neck before it slid on down the runway. On January 8, 1918, Patent No. 1,252,453 was issued to Lathrop & Paulson for a can-discharging mechanism for can-washing machines which embodied the can inverting and cover applying means just described and included a kicker arm to insure the movement of the can down the runway after the cover was in place. Nor was Braun the first to make use of a can inverter that was not wholly dependent upon the force of gravity for its operation. Johnston's Patent No. 1,470,533 which was granted October 9, 1923, for a can-turning device for washing machines shows a turning cradle into which a can would fall when it emerged from the washer clean and dry. This cradle could be manually turned by a crank on the cradle's shaft and had a link connection with the shifting shoe that caused the can to move on the discharging track out of the way as the cradle was swung back to receive another can to be turned.

The accused can turning and cover fitting mechansim used by the defendant is at the discharge end of a washer having the cover guideway directly above the can conveyer as in the Lathrop & Paulson washer and not in the same horizontal place as in the Braun patent. At the outlet end, the cans are pushed bottom side up into a cradle which has two sides alike and which revolves intermittently through an arc of 180 degrees and always turns in the same direction. When a can has been uprighted, it is pushed along horizontal rails to a point directly under where a cover comes from its guideway. It is held there long enough for the cover to drop on and then is pushed by the following can off the horizontal rails to an inclined roller conveyer down which gravity makes it slide. The last can to come through the machine will be pushed off the rails by the mechanically operated pusher. In the uprighting operation the can is not placed upon a lower level nor is it moved sideways. There is no collar to grip the neck or any other part of the can. It is held in the cradle by its own weight resting upon a support at what is the lower end of the cradle as the turning starts and as the turning movement goes through the 180 degree arc the weight shifts gradually to what may be called the cradle floor when the can is horizontal and then gradually to a support at what becomes the lower end of the cradle when the turn is complete. It will, therefore, accept and turn, without requiring any adjustment, cans which vary considerably in height while Braun's inverter requires adjustment for cans either too short or too long to be engaged at the neck by his C-shaped collar.

The suit is upon claims 12 and 13 of the patent. They are both broad claims verbally and 12 will serve well enough for the time being to show what each covers. It reads: "12. Apparatus for the purpose described, comprising a can guideway for inverted cans, a cover guideway, means for advancing the cans in said guideway, means at the delivery end of said can guideway for uprighting the cans, mechanism for moving the uprighted cans to a position below the delivery point of the cover-advancing guideway, and means for causing a cover as each can is moved below said delivery point to descend to the can top from said cover guideway."

As the cans in the accused machine are always below the covers, the defendant neither needs nor uses any "mechanism for moving the uprighted cans to a position below the delivery point of the cover-advancing guideway" of the kind shown in the patent, which moves the cans sideways and lowers them. The defendant's machine does no more in this respect than push them in a straight line on the same horizontal place to cover-receiving position as was done in the Johnston patent. Nor does the defendant have any means, to be taken as the counter-part of the trip release of the patent with its trigger operated by the can, to let a cover drop only when the can is in position to receive

it. Whether a can comes along on time or not in the defendant's machine, the cover will drop off its guideway when it reaches the dropping point. As the last-mentioned element is entirely missing in the accused machine, there is no question as to an equivalent and as the "means" of the defendant for advancing the cans to cover receiving position is merely that of the prior art it can't be held the equivalent of the "means" of the claims which are shown by the specifications to be substantially different from that. Where general language is used in a claim it is always to be read as limited by what is new as a patentable advance as shown by the specifications. Baker Perkins Co. v. Thomas Roulston, Inc., 2 Cir., 62 F.2d 509; Electro Dynamic Co. v. United States Light & H. Corp., 2 Cir., 278 F. 80. Infringement is not proved simply by the language used in a claim without regard to the specifications. It must be proved by showing that the claim covers what is alleged to infringe when the claim is read upon the specifications which describe the invention. Grubman Engineering & Mfg. Co. v. Goldberger, 2 Cir., 47 F.2d 151; McRoskey v. Braun Mattress Co., 9 Cir., 107 F.2d 143; Henry v. City of Los Angeles, 9 Cir., 255 F. 769.

So construed, neither claim covers the defendant's structure and the decree dismissing the bill for lack of infringement was not erroneous.

Decree affirmed.