**DOESKIN PRODUCTS, Inc.,**

**v.**

**Max LEVINSON, doing business as Newburgh Tissue Company.**

United States District Court
S. D. New York.
April 29, 1955.

Armand E. Lackenbach, and Burton Perlman, New York City, for plaintiff.

Max Levinson, pro se, and Irving Seidman, New York City, for defendant.

RYAN, District Judge.

This suit, filed on September 20, 1951, seeks judgment and decree restraining the defendant from further infringement of two of plaintiff's registered trademarks and from continuing acts of alleged unfair competition in the marketing of cleansing or facial tissues, arising from the use by defendant of a "mark" consisting of the pictorial representation of a small lamb or lambkin which plaintiff contends tends to confusion with and conflicts with its common-law rights in a "mark" which is a pictorial representation of a small deer or doe, and arising also from the use by defendant of a carton or package which plaintiff alleges simulates substantially and in gross appearance and look the general format and visual appearance of plaintiff's containers.

The complaint asks injunctive relief pendente lite. The plaintiff made no application to secure such relief. The plaintiff also asks a final injunction, an accounting, and an award for counsel fees and costs.

The complaint pleads two counts—the first for trademark infringement and the second for unfair competition. Particularly, in the first count, plaintiff claims infringement of registered trade-marks—the word "Velour" and the pictorial representation of the registered caricature of a small deer or doe.

Plaintiff is a New York corporation. In the spring of 1949 its corporate name was changed from San-Nap Pak Manufacturing Co., Inc. to Doeskin Products, Inc. The plaintiff is a manufacturer of sanitary napkins for personal use of females and of paper napkins, toilet tissues, cleansing or facial tissues and other soft paper products. Plaintiff is well and favorably known in the field and has for many years enjoyed a position of commercial prominence in the trade. It has large annual interstate sales throughout all the states of the United States, and its products are sold extensively to wholesalers and at retail in chain stores, groceries, drug stores and markets.

Plaintiff has for some years made large expenditures for advertising in newspapers, magazines and periodicals, and on the radio and television.

Defendant conducts a small processing or tissue paper converting business in Newburgh, New York. In a small two-floor loft plant, he cuts and folds rolled tissue into smaller size for personal use as cleansing or facial tissue, packages it in cartons and markets it to retail stores in interstate commerce. Defendant imprints on the carton container the name and advertisement of the retailer to whom he sells and who in turn sells to the purchasing public.

The conflict between plaintiff and defendant has arisen solely with respect to cleansing or facial tissues, and as to this product, common to both, plaintiff and defendant may be said, although to a very small extent, to be competitors in certain sales areas and territories. The principal, but not sole, point of conflict lies in the use by both plaintiff and defendant of a small or diminutive animal in their advertising and imprinted on the carton or containers used for the marketing of this product.

Plaintiff has so used and employed a pictorial representation of a small or young deer or doe as a "mark." Plain-

tiff did not at all times use a full figure of a standing young deer or doe. At times the animal was depicted in a prancing posture; at other times a reclining animal was shown, and sometimes only the head with the special or characteristic features was employed. The size, construction and layout possibilities as to space available determined to a large extent the type of portrayal employed by plaintiff, both in advertising and on the cartons or packages.

This mark of the small doe or young deer, pictured both as it was registered in the United States Patent Office in trademark registration No. 435,300 and as modified in use, has come to be accepted generally by the trade and the public as indicating goods of plaintiff's manufacture and origin; especially is this so when the mark of the doe or young deer is used with plaintiff's mark "Doeskin."

The defendant has, since April, 1951, used a pictorial representation of a small standing lamb or lambkin on its cartons or packages for cleansing or facial tissues, and since May 12, 1953 has been using the portrayal of the small lamb with the child's poem of "Mary had a little lamb," and coupled the lamb with a small representation of a little girl and a description of his tissues as "Mary Lamb Tissues."

Plaintiff has not charged an oral or written palming off or affirmative misrepresentation by defendant of his products as that of the plaintiff's manufacture, save only as such alleged misrepresentation is to be found in the employment by defendant of his lamb and in the general format of defendant's carton or packaging.

■ I find no conscious purpose or plan on the part of the defendant to imitate or copy plaintiff's packaging or the format of plaintiff's carton, or to mislead by portraying a baby lamb or lambkin with the purpose that it would betray or confuse an unsuspecting or unwitting purchaser into believing that defendant's product was in fact of origin with the plaintiff.

■ Underlying plaintiff's contentions, although not so boldly expressed or unequivocally asserted, is the belief plaintiff entertains that by the registration of a pictorial representation of a small doe or deer as a mark for use on cleansing or facial tissues, and by actual use of this mark and of pictorial variations, that it has acquired by statute and law the exclusive right to the use of a pictorial representation of a small or baby animal as a mark for use on cleansing or facial tissues, and that this exclusive right exists and is possessed by the plaintiff irrespective of the particular form, posture, shape or genus of the small or baby animal depicted.

I find and conclude that plaintiff has not acquired such exclusive right.

In the marketing of its products, including cleansing or facial tissues, the following trademarks have been used by the plaintiff:

1. "Doeskin," for which application for registration, serial No. 544,202, in the United States Patent Office was filed on December 12, 1947 and registration issued thereon on May 10, 1949. In the statement on this application it was set forth that the mark was being used for "bathroom tissues in Class 37; that it was first used by plaintiff on March 1, 1939 and was on the same day first used in interstate commerce. The application for registration of this mark "Doeskin" was also filed for Cleansing Tissues, Class 37, by application, serial No. 544,-201, on December 12, 1947, on which registration certificate No. 509,697 issued on May 10, 1949. A further application for registration of this mark "Doeskin" for use on Paper Dinner Napkins and Paper Luncheon Napkins in Class 37 by application serial No. 579,489 was filed May 25, 1949, on which Certificate of Registration No. 540,727 issued April 10, 1951. No infringement of any of these "Doeskin" marks is charged by plaintiff. From the physical exhibits received in evidence, I find that this mark "Doeskin" has been very extensively employed by plaintiff.

2. Another mark used by plaintiff was the word "Velure"; application serial No. 409,978 was filed on August 25, 1938 for registration of this mark and certificate of registration No. 363,724 issued on January 3, 1939. The application for registration of this mark recited its use for "bathroom and toilet tissue" in Class 37 and stated that it had been continuously used by plaintiff since June 24, 1938. Plaintiff alleges this was one of the marks upon which the defendant infringed; that the defendant did so infringe upon this mark by use of the mark "Velour" on the cartons of its facial tissues is evident from plaintiff's Exhibits 23 and 24. Defendant does not deny such infringement. I find that the mark "Velure" was so infringed by the defendant in ignorance of plaintiff's prior rights to the mark. The defendant discontinued the use of the mark "Velour" prior to the filing of this suit, and he consents to a final decree enjoining its future use by him.

As to this mark, plaintiff has waived any claim for damages or for an accounting. As to this mark, and its future use, plaintiff will be granted a decree with injunctive privileges.

3. A pictorial representation of a small standing deer or doe for which application serial No. 514,624 was filed on December 20, 1946 for use for cleansing tissue in Class 37 and certificate of trademark registration issued for this mark on December 16, 1947, No. 435,300. The application for this mark recites that this mark was continuously used by plaintiff since December 12, 1946. It is this mark also which plaintiff claims was infringed by the use of the representation by defendant of his small lamb or lambkin. The plaintiff by this mark registration did not acquire an exclusive right to the use of pictorial representation of all small animals of every kind, nature and genus. Defendant's lamb does not infringe upon plaintiff's registered deer or doe, or in fact on any of the variations of the representation used by plaintiff.

Visually, they are not the same; anatomically they differ; the mental image each creates is different; a deer or doe is not a lamb, at least in the animal kingdom.

The differences pointed out by the defendant in his letter of July 24, 1951, which was marked in evidence as Defendant's Exhibit AA, may be appropriately quoted:

"Both animals have four legs, one head, two ears, one tail, one neck and one nose. Here the similarity ends. Properly, these are not similarities, because they are generic, pertaining to all four-legged animals. Now, for some of the dissimilarities. Where one is brown, the other is white. Where one has nothing in the mouth, the other mouth holds a twig, two leaves and flower. Where one has two eyes showing, the other has only one. Where one's both eyes stare openly, the other's single showing eye does not. Where the whites of both eyes of the one are clearly visible, there is no white in the single showing eye of the other. Where one shows eyebrows on both eyes, there is no eyebrow on the single showing eye of the other. Where both eyes show marked eyelashes on the one, there is not a solitary eyelash on the single showing eye of the other. Where the ears of one are upright, the ears of the other are down. Where the tail of one is upward, the tail of the other is down. Where the surface on one is smooth, the surface on the other is wooly and fleecy. Where the ribbon bow of one is complete, the ribbon bow on the other is incomplete. Where the complete ribbon bow on the one points both upward and downward, the partial ribbon bow on the other points entirely downward. Where one exposes the inside ears, the other exposes the outside of the ears. Where the legs of one are slender, the legs of the other are thick. Where one is in running motion, the other is standing still. Where the forelegs of one are in the air, the forelegs of the other are on the ground. Where the legs of one are bent, the legs of the

other are straight. Where the kneecaps of one do not protrude and are slender, the kneecaps of the other protrude and are markedly thick. Where the hoofs of one are narrow and inconspicuous, the hoofs of the other are broad and marked. Where the ribbon on one is brown, the ribbon on the other is blue. Where the hoofs of one are brown, the hoofs of the other are blue. Where one faces the viewer to the right, the other faces the viewer to the left.

"Even if they were the same animal, or of the same genus, it would require a lot of courage to say they were similar."

I find no infringement of the mark No. 435,300 or of any other of plaintiff's marks by defendant's lamb.

I come now to plaintiff's second count, claiming unfair competition. Plaintiff has by its answer to interrogatories duly propounded stated that this claim "is based upon the strong resemblance of defendant's boxes for facial tissues to those of the plaintiff, particularly with regard to the pictorial representation of a lamb, substantially the same background color, a similar format using a border and background color, these being distributed in the same proportions as on plaintiff's boxes."

In background color, both the plaintiff and the defendant utilize a pink or peach color. However, the use of pastel shades in the packaging and merchandising of facial tissues is common and widespread in the industry. Many other manufacturers use this color and pastel colors generally. It is a reasonable use considering the obvious intent to create a mental impression that the tissues are soft as baby's or baby skin and soft enough for use upon infants and children; and if so soft, then certainly soft enough for milady's face or for other delicate and perhaps more sentitive parts of her body. Plaintiff can in no way claim a monopoly in the use of pastel shades.

Any confusion created by use of background color is entirely dispelled and dissipated by the balance of defendant's format. The defendant uses a dark or navy blue inked band; plaintiff a brown or maroon inked band. The layout or composition of both formats is different, particularly when it is noted that the plaintiff utilizes its mark "Doeskin." The defendant prominently displays a lamb and a little girl, and characteristically names its product "Mary Lamb Tissues," attempting to conjure up mentally the old and cherished nursery rhyme, "Mary had a little lamb."

Defendant presents his product in bold type as "Mary Lamb Tissues."

When viewing the cartons or boxes, first hurriedly and then with studied eye, I cannot find that the mental image created is the same; nor do I believe that the purchasing public has been, is, or will be deceived by defendant's product into believing that it is that of the plaintiff; nor do I believe that any confusing mental image will be created in the minds of the purchasing public by both cartons. Indeed, no proof has been submitted that such confusion has in fact occurred.

I do not find the two packages confusing, and I affirmatively find that they do not create or leave the same mental image and mental impression.

Plaintiff is granted a decree limited in scope as I have set forth as to the mark "Velure" and denied all other relief sought in its prayer and the prayer of its complaint. There will be no costs or counsel fees allowed. A decree may be submitted on notice to all.