**DELAMERE COMPANY, Inc., Plaintiff,**

v.

**TAYLOR–BELL CO., Inc., Defendant,**

against

**F. W. Woolworth Company, Cross-Claim Defendant,**

against

**Charles C. Schwartz, Defendant and Counterclaim Defendant.**

United States District Court
S. D. New York.

Jan. 4, 1966.

Milton Pollack, New York City, for plaintiff; Francis E. Koch, New York City, and Hyman F. Glass, Alexandria, Va., of counsel.

Kenyon & Kenyon, New York City, by Ralph L. Chappell, New York City, of counsel, for defendant Taylor-Bell Co., Inc.

Davies, Hardy & Schenck, New York City, by Kenneth W. Greenawalt, New York City, of counsel, for defendant F. W. Woolworth Co.

Greer Marechal, Jr., New York City, for defendant Charles C. Schwartz.

BONSAL, District Judge.

Plaintiff, Delamere Company, Inc. (Delamere), a Delaware corporation, brings this action against Taylor-Bell Co., Inc. (Taylor-Bell), a New York corporation, for a declaratory judgment declaring that Taylor-Bell's patent No. 2,842,140 issued on July 8, 1958 is invalid and has not been infringed by Delamere, and that Delamere is not competing unfairly with Taylor-Bell. In addition, Delamere seeks damages against Taylor-Bell for its alleged malicious interference with Delamere's business relations and an award of counsel fees. Taylor-Bell has counterclaimed for patent

infringement and unfair competition and has joined as a cross-claim defendant F. W. Woolworth Company (Woolworth), a New York corporation.[1] Charles C. Schwartz, who claims an 8% interest in the patent, was joined as a party but no claim is asserted against him; he has asserted no claim and he did not participate in the trial. The case was tried on October 15 and 18, 1965.

The patent in suit was applied for on September 16, 1954 by Carl Louis Otto and LaNelle Burnham Otto and was issued to Caronelle, Inc. (Caronelle) on July 8, 1958. The patent application and all rights thereunder were assigned by the Ottos to Caronelle on December 16, 1954. The assignment of an 8% interest in the patent application was made to Schwartz by Caronelle on February 4, 1957. On January 4, 1960, Caronelle assigned its interest in the patent to Taylor-Bell.

The issues to be decided are: (1) whether the patent in suit is valid, (2) whether Delamere's "Goody" curlers infringe the patent, (3) whether Delamere competed unfairly with Taylor-Bell by its use of the colors pink and white in the marketing of its "Goody" hair curlers, (4) whether Taylor-Bell is liable for malicious interference with Delamere's business relations, and (5) whether Delamere is entitled to an award of counsel fees.

### Validity of the Patent

The court is called upon at the outset to decide upon the validity of the patent at suit. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). Twenty-one claims are listed in the patent, of which numbers 2, 4, 5, 17 and 18 have been put at issue by Taylor-Bell. Claim 17 is typical. It provides for:

"A hair curling device embodying a substantially cylindrical core member comprising elastically resilient porous, sponge-like, non-metallic plastic material adapted to have a tress of hair wound therearound and to be radially compressed by the tress of hair so wound therearound, and a retaining member associated with said core member and having a portion comprising separate substantially parallel fingers adapted to extend longitudinally of the length of said core member and exteriorly thereof and over the tress of hair wound thereon to retain the latter in place and at least one additional longitudinally extending finger adapted to locate it to engage said core member to hold the first mentioned fingers in place, and an end portion for joining the aforesaid several finger portions together at the end of the device."

The other claims contain slight variations. Claim 2 requires that either the core or the retaining member be resiliently yieldable, but does not specify which one. There are variations in wording as to the manner in which the retaining member is engaged to the core. Each claim requires, however, that the retaining member have at least two substantially parallel fingers extending over the core and an additional finger or portion adapted to engage the core.

These claims do not limit the retaining member to one designed to be forced longitudinally over the core member nor to one where there is a narrow gap between the fingers extending over the core. However, the specifications make clear that the claims are to be so construed. The claims of a patent must be read in light of the specifications. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Western States Mach. Co. v. S. S. Hepworth Co., 147 F.2d 345 (2d Cir. 1945); Carl Braun, Inc. v. Kendall-Lamar Corp., 116 F.2d 663 (2d Cir. 1941). Thus narrowed, the

---

1. Delamere has given Woolworth an indemnification agreement. At the trial, the defense on behalf of Woolworth on the counterclaims was assumed by counsel for Delamere.

court must determine the validity of the Taylor-Bell patent.[2]

Taylor-Bell contends that its patent, although a combination of elements known to the prior art, combines those elements so as to produce a new, useful and unexpected result. Taylor-Bell maintains that the heart of the invention is the combination of a resilient core, which is compressed by the tresses wound around it and which maintains the hair under tension, and a retaining member with parallel fingers which holds the tress in position and under tension. Although conceding that the concepts of a sponge-like cylindrical core and of a three-pronged retaining member are not new, Taylor-Bell argues that the combination producing the tension is new and patentable.

Delamere argues that the Taylor-Bell patent is invalid for want of invention. Delamere contends that the elements combined in the Taylor-Bell patent produce no new or unexpected results and, alternatively, that the alleged invention is \fully anticipated by the prior art or that any improvements made over that art would have been obvious at the time of the invention to a person having ordinary skill in the art.[3]

Taylor-Bell correctly concedes that the two elements of its patent are not in themselves new or patentable. Soft resilient cores around which hair is wound are old in the art of hair curlers. The three-pronged retaining member itself is not novel (See M. D. Avillar, Patent No. 1,245,173 issued Nov. 6, 1917).

Taylor-Bell's claim is thus limited to the combination of these two items which it argues produces a new, useful and unexpected result. The test for judging the validity of combination patents was laid down by the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U. S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). There the claimed invention was a "cashier's counter equipped with a three-sided frame, or rack, with no top or bottom,

2. Read literally, the claims were anticipated by Hansen, Patent No. 820,015 (French) issued July 19, 1937 which shows a curler with a resilient core, two parallel fingers extending over the core to engage the hair wound around the core, and an additional finger which engages the core through a hole in the center.

The curler marketed by Taylor-Bell and its predecessor, Caronelle, consists of a cylindrical core with a hole running through the center lined with plastic, and a plastic retaining member having three parallel fingers (one longer than the other two) joined at one end by a triangular end portion. The core is made out of polyurethane, a sponge-like material. In operation, hair is wound around the core and the retaining member is put in place, the longer finger being inserted into the hole in the core and the other two fingers gripping the hair on the core.

3. 35 U.S.C. provides:

"§ 101. Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

"§ 102. A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

\* \* \* \* \*

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

\* \* \* \* \*

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. \* \* \*

"§ 103. A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. \* \* \*"

which, when pushed or pulled, will move groceries deposited within it by a customer to the checking clerk and leave them there when it is pushed back to repeat the operation." After finding that none of the elements of the combination were new, the court held the combination unpatentable for want of invention. In stating the proper test for patentability of a combination of old elements, the court said, at page 152, 71 S.Ct. at page 130:

> "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. * * *

> " * * * This counter does what a store counter always has done—it supports merchandise at a convenient height while the customer makes his purchases and the merchant his sales. The three-sided rack will draw or push goods put within it from one place to another—just what any such a rack would do on any smooth surface—and the guide rails keep it from falling or sliding off from the counter, as guide rails have ever done. Two and two have been added together, and still they make only four."

See also Schaefer, Inc. v. Mohawk Cabinet Co., 276 F.2d 204 (2d Cir. 1960); Zoomar, Inc. v. Paillard Products, 258 F.2d 527 (2d Cir. 1958); Bergman v. Aluminum Lock Shingle Corp. of America, 251 F.2d 801 (9th Cir. 1957); Modella Manufacturing Co. v. Famous Bathrobe Co., 151 F.Supp. 542 (S.D.N.Y. 1956).

The principle involved in the A. & P. case is controlling here. The resilient core in the Otto device will hold hair wound around it in tension just as resilient cores on hair curlers have always done. The three-pronged retaining member will hold the hair in place just as similar such devices have always done. The court fails to see any novel or unexpected consequences resulting from the combination of these two elements and accordingly the Taylor-Bell patent is wanting in invention.

Even assuming that the combination here has met the standard of invention, the court is convinced that the combination has been anticipated by the prior art and that any claimed improvements over that art "would have been obvious at the time the invention was made to a person having ordinary skill in the art."

Ora D. McClintock, Patent No. 1,459,228 issued June 19, 1923 discloses a core of resilient material around which a tress of hair is wound, a clasp having two arms which run through the center of the core and clasp on the outside over the hair much like a safety pin, and a flexible hairpin member with a loop at one end which is inserted through the core, the two ends and loop of which are then bent over the hair. Ora D. McClintock, Patent No. 1,461,533 issued July 10, 1923 is similar except that it does not utilize a clasp member. The clasp member on the first McClintock patent functions in the same manner as the retaining member in the Taylor-Bell patent. Two fingers extend over the hair wound around the core to grip it and hold it in tension while a parallel member engages the core through a hole in the center of it. Although the Taylor-Bell member slides into place whereas the McClintock clasp works like a safety pin, this difference, if an improvement, is one which would be obvious to a workman skilled in the art. Similarly, the hairpin member of both McClintock curlers operates to grip the hair on the core and hold it in tension like the Taylor-Bell retaining member. The loop on one side and the two ends of the pin on the other both fold over the hair, the rest of the pin running through the hole in the center of the core. The fact that the Taylor-Bell member slides over the hair whereas the McClintock hairpin is folded

over the hair does not functionally differentiate the two. At most, it is an advance in workmanship which would be obvious to one skilled in the art. Thus, both these patents are an anticipation of the combination disclosed by Taylor-Bell.

Similarly, the sponge rubber curlers sold by Delamere at least since 1949, embody a soft core through which is run a flexible wire loop. The loop ends extend out from each end of the core and are folded over the tress of hair after it has been wound around the core. This device achieves the same result as the Taylor-Bell curler, which is to place the hair in tension by winding it around the soft core and to maintain it in tension by a member which grips the hair on the outside of the core and engages the core through its center. The sliding motion of the Taylor-Bell disclosure as against the folding action of the old Delamere curlers is at most a difference of workmanship.

■■■ It is the court's conclusion that the patent in suit is at most an "obvious" improvement over the above prior art. See Dempster Brothers, Inc. v. Buffalo Metal Container Corp., 352 F.2d 420 (2d Cir. 1965); Gentzel v. Manning, Maxwell & Moore, Inc., 230 F.2d 341 (2d Cir. 1956). It is true, as Taylor-Bell argues, that a duly issued patent is entitled to a presumption of validity. However, that presumption is much weakened if not completely negated where, as here, the prior art advanced against the patent was not considered by the Patent Office prior to the issuance of the patent in suit. Lorenz v. F. W. Woolworth Co., 305 F.2d 102 (2d Cir. 1962); Zoomar, Inc. v. Paillard Products, 258 F.2d 527 (2d Cir. 1958); Alex Lee Wallau, Inc. v. J. W. Landenberger & Co., 121 F.Supp. 555 (S.D.N.Y.1954). The record here shows no evidence of immediate commercial success of the patented product such as might support Taylor-Bell's argument that the curler filled a long-felt want that others had striven in vain to fill. Lorenz v. F. W. Woolworth Co., supra; Dempster Brothers, Inc. v. Buffalo Metal Container Corp., supra; Reiner v. I. Leon Co., 285 F.2d 501 (2d Cir. 1960). The

patent in suit must accordingly be declared invalid.

This makes it unnecessary to determine whether the patent must be declared invalid on the ground that an alleged co-inventor, Joan Briton, was not included in the patent application with the Ottos. Much testimony was offered by Mrs. Briton and the Ottos on this issue, from which it appears that the three organized Caronelle to promote the hair curlers on which the patent in suit was issued.

### Infringement

The court is of the further view that the patent in suit, even if valid, is not infringed by Delamere's curler. Delamere's "Goody" curler consists of a cylindrical polyurethane core with a hole in the center and a plastic frame. The latter is made up of a finger through the middle of the core and a rectangular frame, hinged to one end of the finger, which is designed to swing over the core and clamp in place at the other end of the finger. The finger through the middle is so constructed that it grips tightly the inner wall of the hole in the core. In operation, hair is wound around the polyurethane core and the frame is then swung into place over the core and clamped.

Taylor-Bell contends that the Delamere curler works in the same manner as its patented device and thus infringes the patent. According to Taylor-Bell, the resilient core of the Delamere curler holds in tension a tress of hair wound around it. The hair is then maintained in tension by the outside frame when it is closed over the curler.

Delamere, on the other hand, argues that its curler functions entirely differently from the device described in the Taylor-Bell patent. The purpose of the frame on the Delamere curler, according to Delamere, is merely to prevent the curl from falling back and opening up once wound around the polyurethane center. The frame is not supposed to press upon the hair.

To establish infringement, Taylor-Bell must show that every element of its combination has been infringed, for the law is clear that there can be no infringement of a combination patent unless every element has been copied. Alex Lee Wallau, Inc. v. J. W. Landenberger & Co., 121 F.Supp. 555 (S.D.N.Y. 1954); Etten v. Kauffman, 121 F.2d 137 (3d Cir. 1941). This rule must be qualified to the extent that the substitution by the infringer of an equivalent for one of the elements in the combination will not avoid a claim for infringement. Etten v. Kauffman, supra. However, where an element of the alleged infringing device is taken from the prior art, it cannot be held the equivalent of an element of the patentee's claim. Reiner v. I. Leon Co., 324 F.2d 648 (2d Cir. 1963); Carl Braun, Inc. v. Kendall-Lamar Corp., 116 F.2d 663 (2d Cir. 1941).

As noted earlier, the claims asserted by Taylor-Bell in this suit are broadly written and literally require only that the retaining member have two or more parallel finger portions extending over the core to engage the hair wound therearound and an additional finger portion for engaging the core. The specifications, however, limit the claims to a retaining member which is forced longitudinally over the core member and its wound tress of hair to hold the same in pressure engagement and which has a narrow gap between the fingers. The claims in suit must be read in light of these specifications. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Western States Mach. Co. v. S. S. Hepworth Co., 147 F.2d 345 (2d Cir. 1945); Carl Braun, Inc. v. Kendall-Lamar Corp., supra. Since the frame of the Delamere curler is not constructed in this manner, it does not read upon the claims in suit taken in light of their specifications. The question before the court, therefore, is whether the Delamere frame can be deemed the equivalent of the Taylor-Bell sliding pin so as to sustain a claim of infringement.

The court does not find that the frame portion of the Delamere curler is the functional equivalent of the retaining member described in the Taylor-Bell patent. The retaining member described in the patent is clearly designed to press down upon the core and the hair wound around it. Indeed, this feature of the device has been repeatedly stressed by Taylor-Bell. Examination of the Delamere curler reveals that its frame serves the purpose not of pressing down on the hair but rather of locking the device so that it cannot unroll and the hair cannot come off once the frame has been clamped shut. Although the frame may touch the outer portion of the tress of hair wound around the core, the frame's structure is such that it does not exert a significant amount of pressure upon the hair. Thus, the most important function attributed by Taylor-Bell to the retaining member on its device is not performed by the frame member of the Delamere curler, and the two elements cannot be deemed functional equivalents. Hence the Delamere curler does not utilize one of the elements of the combination disclosed by the Taylor-Bell patent or an equivalent thereof.

Even if the Delamere frame was found to perform the same function as the retaining member of the Taylor-Bell patent, it would not be a functional equivalent because the Delamere frame was anticipated by the prior art. In Reiter, Patent No. 2,265,492 issued Dec. 9, 1941, a frame consisting of an elastic band swings over the core and is locked into place in the same manner as the Delamere frame. Functionally, the Reiter elastic band grips the hair and holds it in tension, which is exactly what Taylor-Bell claims the Delamere frame does. In Winks, Patent No. 1,457,099, issued May 29, 1923, a rubber band is employed in a similar manner and is an anticipation of any frame which swings over a soft core, locks in place, and grips the hair. Beadle, Patent No. 1,990,891, issued Feb. 12, 1935, utilizes a wire frame which swings into place over a soft core in exactly the same manner as the Delamere frame; except

for the use of wire rather than plastic for the frame, the first six claims in Beadle read directly on the Delamere frame. This prior art was all available to Delamere in the construction of the frame member of its curler, and this frame therefore cannot be deemed the equivalent of the Taylor-Bell retaining member to support a claim of infringement. Hence, the Delamere curler would not infringe the patent in suit even if the patent had been found valid, and Taylor-Bell's claim for infringement will be dismissed.[4]

### Unfair Competition

Taylor-Bell's claim against Delamere for unfair competition is based upon Delamere's use of the color scheme of a pink core and a white frame packaged in a transparent container for its "Goody" curlers.[5] Taylor-Bell maintains that this color scheme and packaging created confusion in the minds of purchasers who might have bought "Goody" curlers thinking them to be the product of Taylor-Bell.

Delamere's curlers, which it markets under the federally registered trademark "Goody", consist of a pink core and a white frame. They are packaged in a transparent bag at the top of which is a label or saddle more than an inch high and several inches wide of a bright contrasting pink color with white and black lettering.

The Taylor-Bell curlers, which were marketed under the federally registered trademark "Pink Cloud", also consisted of a pink core and a white three-pronged retaining member. Taylor-Bell's curlers were packaged in transparent boxes, oval or rectangular in shape, with a label of white with soft pink lettering placed inside the box.

Taylor-Bell has not shown that its pink and white color combination or its packaging has acquired secondary meaning, i. e. that the combination has become identified in the minds of the purchasing public with the defendant's curlers. See Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962). No instance has been shown of actual customer confusion between the curlers of Delamere and those of Taylor-Bell. The evidence shows that Caronelle, Taylor-Bell's predecessor until 1960, did only a few thousand dollars worth of business per year, and that even in 1960, just before the "Goody" curlers came on the market, Taylor-Bell's sales were only in the neighborhood of $24,000. Furthermore, the evidence shows that except for a brief period in 1955, the curlers of Taylor-Bell and its predecessor Caronelle received little advertising.

Absent such secondary meaning, the courts have limited unfair competition recovery to instances of actual deception such as palming off. Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959); Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962). Such practices cannot be shown on the basis of mere similarity of color. Norwich Pharmacal Co. v. Sterling Drug, Inc., supra; Campbell Soup Co. v. Armour & Co., 175 F.2d 795 (3d Cir. 1949); Doeskin

---

4. In denying Taylor-Bell's claim for infringement, the court does not hold that Taylor-Bell is estopped by any positions taken by counsel for the Ottos in the proceedings before the Patent Office prior to the granting of the patent. Although an estoppel will result when an applicant abandons or narrows his claims in order to obtain a patent, the law in this circuit is clear that no file wrapper estoppel can be based solely upon arguments made by counsel to persuade favorable consideration of a patent application. A. G. Spalding & Bros. v. John Wanamaker, 256 F. 530 (2d Cir. 1919); Catalin Corp. of America v. Catalazuli Mfg. Co., 79 F.2d 593 (2d Cir. 1935); Katz v. Horni Signal Mfg. Corp., 145 F.2d 961 (2d Cir. 1944); Zenith Radio Corp. v. Lehman, 121 F. Supp. 69 (S.D.N.Y.1954).

5. Taylor-Bell is precluded from basing any part of its unfair competition claim upon similarity of design of the two curlers themselves. Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

Products v. Levinson, 132 F.Supp. 180 (S.D.N.Y.1955); Radio Corporation of America v. Decca Records, 51 F.Supp. 493 (S.D.N.Y.1943). This is not a case where a distinctive mark or symbol, including the color combination incorporated therein, has been copied. See American Chicle Co. v. Topps Chewing Gum, Inc., 208 F.2d 560 (2d Cir. 1953). There is no evidence of intentional palming off; in fact, Mr. Goodman testified that Delamere had never heard of Taylor-Bell or its predecessor, Caronelle, Inc., until after it had started making its "Goody" curlers. Furthermore, the evidence showed that Delamere has marketed curlers in pink as well as other colors for many years. The court cannot ignore the fact that pink is commonly used in hair notions, cosmetics and other articles designed for the feminine trade.

■ Even if secondary meaning could be shown, Delamere's packaging of its "Goody" curlers is so wholly different from that of Taylor-Bell that no confusion between the two is likely. The oval or rectangular boxes with soft pink labels inside which house the Taylor-Bell curlers create an entirely different appearance than the Delamere transparent bags with contrasting pink-colored labels or saddles at the top. The Taylor-Bell claim for unfair competition will accordingly be dismissed.

### Malicious Interference with Business Relations

Delamere charges Taylor-Bell with malicious interference with its business relations in threatening its customer fringement and unfair competition and in publicizing to the trade the bringing of suit in Virginia against Woolworth. It is undisputed that in May of 1961, Delamere and Woolworth received notice of claims of infringement and unfair competition from Taylor-Bell. In June of 1961, Taylor-Bell instituted suit against Woolworth in the Western District of Virginia for patent infringement and unfair competition. It sent notice to the trade of the commencement of the Virginia suit and placed an advertisement in the "American Druggist" to the same effect. The prosecution of the Virginia suit was later enjoined by this court (199 F.Supp. 55 (1961)). Delamere claims that, as a result, it has been put to legal expense which it seeks to recover together with an award for punitive damages.

■ After reviewing the evidence, the court concludes that Delamere has not shown bad faith on the part of Taylor-Bell. This was a typical situation of amateur inventors developing a home-made device from which they sought fame and fortune, which is the kind of undertaking that our system of free enterprise encourages, and from which many important improvements have come. It was only natural that they were enthusiastic over their device, particularly after the patent was issued, and that they should have sought, through their patent counsel, to protect the device which they had made. The letter written to Woolworth and the notice to the trade were the kind of action usually taken in these circumstances, and in all likelihood the decision to bring suit in Virginia was made by patent counsel and not by Taylor-Bell. While not passing on the issue as to whether Joan Briton should have been included as a co-inventor in the patent application, there is no basis for holding that such failure constituted bad faith vis-a-vis Delamere. As well stated by our Court of Appeals in Kaplan v. Helenhart Novelty Corp., 182 F.2d 311 (2d Cir. 1950): " * * * it is not an actionable wrong for one in goood faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are." (page 314.)

### Counsel Fees

■ Delamere seeks an award of attorney's fees under 35 U.S.C. § 285 which empowers the court to grant reasonable attorney fees to the prevailing party in a patent suit in exceptional cases. Such an award must generally be based upon a finding of bad faith on the

part of the losing party. Park-In-Theatres v. Perkins, 190 F.2d 137 (9th Cir. 1951); AMP Incorporated v. Burndy Corp., 332 F.2d 236 (3d Cir. 1964); Wilson v. Seng Co., 194 F.2d 399 (7th Cir. 1952). For the reasons already stated, the court finds no bad faith on the part of Taylor-Bell, nor does it find any other circumstances justifying such an award. Accordingly, Delamere's claim for counsel fees will be dismissed.

The foregoing opinion constitutes the court's findings of fact and conclusions of law (Rule 52(a) F.R.Civ.P.).

Judgment will be entered declaring that Taylor-Bell's patent No. 2,842,140, issued July 8, 1958, is invalid and is not infringed by Delamere's "Goody" hair curlers, and that Delamere did not compete unfairly with Taylor-Bell in the sale of its "Goody" hair curlers; dismissing (1) Delamere's claims for malicious interference and for counsel fees, (2) Taylor-Bell's counterclaim for patent infringement and unfair competition against Delamere, and (3) Taylor-Bell's cross-claim for patent infringement and unfair competition against Woolworth, with costs to Delamere.

Settle judgment on notice.